COURT OF APPEALS OF VIRGINIA

Present: Judges Alston, McCullough and Senior Judge Clements
Argued by teleconference

UNPUBLISHED

MARVIN JAMES KERSEY

MEMORANDUM OPINION* BY
v.      Record No. 1595-14-2      JUDGE ROSSIE D. ALSTON, JR.
NOVEMBER 24, 2015

COMMONWEALTH OF VIRGINIA

FROM THE CIRCUIT COURT OF THE CITY OF RICHMOND
Beverly W. Snukals, Judge

Jennifer M. Newman (Jennifer M. Newman, PC, on brief), for
appellant.

Elizabeth C. Kiernan, Assistant Attorney General (Mark R. Herring,
Attorney General, on brief), for appellee.

Marvin James Kersey ("appellant"), appeals his convictions for statutory burglary and

attempted grand larceny. Appellant argues that the trial court erred in convicting him of

statutory burglary and attempted grand larceny because the evidence was insufficient to prove

beyond a reasonable doubt the following essential elements: (1) that appellant committed a

breaking into the victim's apartment; (2) that appellant entered the apartment contrary to the will

of the victim; (3) that appellant entered the apartment with the specific intent to commit larceny;

and (4) that appellant committed an overt act towards completing the taking of the victim's

property. We disagree and affirm the decision of the trial court.

---

* Pursuant to Code § 17.1-413, this opinion is not designated for publication.

BACKGROUND

On May 14, 2012, appellant was indicted on one (1) count of armed statutory burglary in violation of Code §§ 18.2-90,[1] 18.2 -91,[2] and one (1) count of attempted grand larceny in violation of Code §§ 18.2-95[3] and 18.2-26.[4]  Appellant was arraigned at his trial on June 7, 2013, and pled not guilty.  Immediately following his plea, appellant was tried in a bench trial.

---

[1] Code § 18.2-90 "Entering dwelling house, etc., with intent to commit murder, rape, robbery or arson; penalty" provides in part:

> If any person in the nighttime enters without breaking or in the daytime breaks and enters or enters and conceals himself in a dwelling house . . . with intent to commit murder, rape, robbery or arson in violation of §§ 18.2-77, 18.2-79 or § 18.2-80, he shall be deemed guilty of statutory burglary, which offense shall be a Class 3 felony.  However, if such person was armed with a deadly weapon at the time of such entry, he shall be guilty of a Class 2 felony.

[2] Code § 18.2-91 "Entering dwelling house, etc., with intent to commit larceny, assault and battery or other felony" provides in part:

> If any person commits any of the acts mentioned in 18.2-90 with intent to commit larceny, or any felony other than murder, rape, robbery or arson . . . or if any person commits any of the acts mentioned in 18.2-89 or 18.2-90 with intent to commit assault and battery, he shall be guilty of statutory burglary . . . .  However, if the person was armed with a deadly weapon at the time of such entry, he shall be guilty of a Class 2 felony.

[3] Code § 18.2-95 "Grand larceny defined; how punished" provides in part:

> Any person who (i) commits larceny from the person of another of money or other thing of value of $5 or more, (ii) commits simple larceny not from the person of another of goods and chattels of the value of $200 or more, . . . shall be guilty of grand larceny, punishable by imprisonment in a state correctional facility for not less than one nor more than twenty years or, . . . be confined in jail for a period not exceeding twelve months or fined not more than $2,500, either or both.

[4] Code § 18.2-26 "Attempts to commit noncapital felonies; how punished" provides in part:

The victim testified that in May of 2012, he lived in an apartment located at 3528 East Richmond Road in Richmond, Virginia, and although a second individual (Clarence Robinson) was listed on the lease, the victim was the only individual residing in the apartment at the time of the incident. The victim recalled securing the doors and windows to the apartment and then leaving for work on the morning of May 14, 2012. Later that same day, the victim received a phone call from the Richmond Police Department asking him to return to the apartment.

At trial, the Commonwealth presented the victim with photographs taken of his apartment on May 14, 2012. After looking at the pictures, the victim testified that the photographs, which were entered into evidence as Exhibit 1, accurately portrayed the condition of his apartment when he returned home. The first set of photographs (labeled A and B) depicted the front window of the victim's apartment open with the window screen removed. Photograph D depicted several items of the victim's personal property, including a laptop, clothing, and several watches located between the front door and the window depicted in photographs A and B. The victim testified that the items depicted in photograph D were in his room when he left for work. The victim stated that the watches ranged in value from $35 to $700, and the laptop was worth several hundred dollars.

---

Every person who attempts to commit an offense which is a noncapital felony shall be punished as follows:

(1) If the felony attempted is punishable by a maximum punishment of life imprisonment or a term of years in excess of twenty years, an attempt there at shall be punishable as a Class 4 felony.

(2) If the felony attempted is punishable by a maximum punishment of twenty years' imprisonment, an attempt thereat shall be punishable as a Class 5 felony.

(3) If the felony attempted is punishable by a maximum punishment of less than twenty years' imprisonment, an attempt thereat shall be punishable as a Class 6 felony.

Photographs G and K depicted the upstairs floor of the victim's apartment. The victim testified that the rooms appeared "ransacked" in the photographs, though they were not when he left for work. Photographs U and V depicted a firearm located on the victim's couch under the seat cushions. The victim testified that the gun did not belong to him and was not in the apartment when he left for work. The victim further testified that he discovered the gun when he sat down on the couch after cleaning his apartment post break-in. The victim also testified that he had never seen appellant before the break-in.

Serena Ponce ("Ponce") resided in the apartment next to the victim's at the time of the break-in. On the day of the break-in, Ponce "heard [someone] banging on the window," and looked outside to see "a gentleman banging on a door next door at Apartment 2." Ponce watched from a window as the man, who she described as heavyset, used a screwdriver to remove a screen from a window of the neighboring apartment and then enter the victim's apartment through the window. Ponce then called the police. Ponce testified that after entering the apartment, the heavyset man exited the front door, walked around the corner of the apartment, and returned with two other men. All three men then entered the apartment through the open front door. Ponce testified that the heavyset individual was out of the apartment for "not even a minute" before returning with the two other men. "It was like he went and came right back." Ponce stated that she observed one of the individuals, though not appellant, carrying a firearm in a holster.

When the police first responded to Ponce's report of the break-in, Ponce observed two patrol cars pass the apartment, at which time two of the individuals exited the apartment. Appellant was the last one to exit the house, and because "there really wasn't anywhere for him to go, [] he [started] knocking on [Ponce's] door." Ponce identified appellant as one of the three

- 4 -

individuals who entered the victim's apartment. She identified appellant to the police upon his arrest at the scene.

Sergeant Alston of the Richmond Police Department was the first officer to arrive at the apartment complex in response to a call of a breaking and entering in progress. Sergeant Alston testified that upon entering the apartment complex, he observed appellant "walking away from [an] apartment with a screen down by the window." Sergeant Alston also stated that "[appellant] immediately walked to the first door to his right and started knocking on it." Appellant did not provide his name when Sergeant Alston approached and asked whether he lived in the apartment with the broken window screen.

Detective Partain of the Richmond Police Department testified that he took the photographs constituting Commonwealth's Exhibit 1. According to Detective Partain, the photographs accurately depicted the apartment as it was when he arrived shortly after Sergeant Alston.

Following the Commonwealth's case-in-chief, appellant raised a motion to strike. First, appellant asserted that the Commonwealth failed to prove that appellant "did, in fact, break and enter or enter and conceal himself in the daytime." Apparently recognizing that the Commonwealth was proceeding on a theory that the three men acted in concert, appellant argued that a reasonable hypothesis existed that appellant was present but not involved with the theft. Specifically, that appellant may have "[come] to watch" and "see what [was] going on." Second, appellant asserted that the evidence did not establish that appellant could be imputed with the knowledge of the firearm, which Ponce testified she observed on one of the other intruders.

The Commonwealth responded that the case was "a classic accessory of liability situation where multiple people are involved in the same criminal scheme," and it was enough to establish that "one [individual went] in the window and open[ed] the door for the others." Concerning the

firearm, the Commonwealth argued that it was reasonable to infer from the discovery of a firearm inside the apartment, which the victim disclaimed owning, and Ponce's observation of one of the individuals having holstered what appeared to be a firearm, that the breaking and entering was completed by a person armed with a deadly weapon. The trial court denied appellant's motion to strike.

Appellant chose not to put on any evidence and then renewed his motion to strike. The parties continued argument concerning whether the evidence was sufficient to prove the "deadly weapon" element of armed burglary. Eventually, the Commonwealth agreed to "strik[e] it to statutory burglary," rather than armed burglary. Appellant then argued that there was no evidence that he was involved in the act of breaking into the victim's apartment, that he gathered any of the victim's property and placed it next to the door, or that he was there participating or acting as a lookout. Rather, all the Commonwealth's evidence showed is that appellant was present at the scene.

Appellant also asserted that the Commonwealth's evidence did not disprove a reasonable hypothesis of innocence. Specifically counsel for appellant argued that appellant:

> could have been with those people and they say, we're going to go over here. We're going to rob, we're going to burglarize. We're going to take a bunch of stuff. [Appellant] goes, I'll come and watch that. I'll come check this out. I don't like that guy either. I want to see him get ripped off.

The trial court found appellant's hypothesis of innocence unreasonable "given [appellant's] actions immediately" after the burglary, specifically "[appellant] knocking on [Ponce's] door immediately thereafter when the police [arrived]." The trial court found appellant guilty of one count of statutory burglary and one count of attempted grand larceny. On October 3, 2013, appellant was sentenced to a total of twenty-five years' imprisonment, with twenty-one years suspended. This appeal followed.

STANDARD OF REVIEW

"Where the sufficiency of the evidence is challenged after conviction," this Court "will reverse a judgment of the circuit court only upon a showing that it is plainly wrong or without evidence to support it." Singleton v. Commonwealth, 278 Va. 542, 548, 685 S.E.2d 668, 671 (2009) (citation omitted); see also Code § 8.01-680. When reviewing the sufficiency of the evidence, this Court "does not 'ask itself whether *it* believes that the evidence at the trial established guilt beyond a reasonable doubt.'" Crowder v. Commonwealth, 41 Va. App. 658, 663, 588 S.E.2d 384, 387 (2003) (quoting Jackson v. Virginia, 443 U.S. 307, 318-19 (1979) (emphasis in original)). Rather, we "must . . . ask whether '*any* rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt.'" Id. (quoting Kelly v. Commonwealth, 41 Va. App. 250, 257, 584 S.E.2d 444, 447 (2003) (*en banc*)).

When reviewing the sufficiency of the evidence, this Court is required to "consider the evidence and all reasonable inferences fairly deducible therefrom in the light most favorable to the Commonwealth, the prevailing party at trial." Perry v. Commonwealth, 280 Va. 572, 578, 701 S.E.2d 431, 435 (2010) (quoting Bass v. Commonwealth, 259 Va. 470, 475, 525 S.E.2d 921, 924 (2000)). This deferential standard "applies not only to the historical facts themselves, but the inferences from those facts as well." Clanton v. Commonwealth, 53 Va. App. 561, 566, 673 S.E.2d 904, 907 (2009) (*en banc*) (quoting Crowder, 41 Va. App. at 663 n.2, 588 S.E.2d at 387 n.2). "Viewing the record through this evidentiary prism requires [this Court] to discard the evidence of the accused in conflict with that of the Commonwealth, and regard as true all the credible evidence favorable to the Commonwealth and all fair inferences to be drawn therefrom." Smith v. Commonwealth, 56 Va. App. 711, 714, 697 S.E.2d 14, 15 (2010) (quoting Cooper v. Commonwealth, 54 Va. App. 558, 562, 680 S.E.2d 361, 363 (2009)).

ANALYSIS

Appellant challenges his convictions of statutory burglary and attempted grand larceny. He contends that the evidence was insufficient to support both convictions because the Commonwealth's evidence failed to prove that he committed "all of the essential elements of each crime." Focusing his attention exclusively on the theory that the evidence tends to prove his guilt as a principal in the first degree, appellant notes in passing that "mere presence [at the scene] is not sufficient" to support a conviction, but otherwise turns a blind eye to the Commonwealth's contention that the evidence supports his guilt as a principal in the second degree.

"A principal in the first degree is the actual perpetrator of the crime. A principal in the second degree, or an aider or abettor as he is sometimes termed, is one who is present, actually or constructively, assisting the perpetrator in the commission of the crime." Muhammad v. Commonwealth, 269 Va. 451, 482, 619 S.E.2d 16, 33 (2005) (quoting Jones v. Commonwealth, 208 Va. 370, 372, 157 S.E.2d 907, 909 (1967)). As we have held on numerous occasions, a "principal in the second degree may be indicted, tried, convicted and punished as if a principal in the first degree." Allard v. Commonwealth, 24 Va. App. 57, 62, 480 S.E.2d 139, 141 (1997) (citing Code § 18.2-18). But while the Commonwealth must prove that the offense was committed by the principal in the first degree in order to sustain a conviction of a principal in the second degree, see Sutton v. Commonwealth, 228 Va. 654, 665, 324 S.E.2d 665, 671 (1985), proof of "actual participation in the commission of the crime is not necessary" "to make a person a principal in the second degree," Muhammad, 269 Va. at 482, 619 S.E.2d at 33 (quoting Jones, 208 Va. at 372, 157 S.E.2d at 909).

To support a conviction under this theory, the Commonwealth need only prove that the accused was present at the scene of the crime and shared the criminal intent of the perpetrator or

committed some act in furtherance of the offense.  Allard, 24 Va. App. at 62, 480 S.E.2d at 141

(citing Rollston v. Commonwealth, 11 Va. App. 535, 540, 399 S.E.2d 823, 826 (1991)).  Mere

presence when a crime is committed is not sufficient to render one guilty as a principal in the

second degree.  Hall v. Commonwealth, 225 Va. 533, 536, 303 S.E.2d 903, 904 (1983).

However,

> [w]hile mere presence at the scene of a crime or knowledge that a
> crime is going to be committed does not constitute aiding and
> abetting, accompanying a person with full knowledge that the
> person intends to commit a crime and doing nothing to discourage
> it bolsters the perpetrator's resolve, lends countenance to the
> perpetrator's criminal intentions, and thereby aids and abets the
> actual perpetrator in the commission of the crime.

Pugliese v. Commonwealth, 16 Va. App. 82, 94, 428 S.E.2d 16, 25 (1993).  See Foster v.

Commonwealth, 179 Va. 96, 99, 18 S.E.2d 314, 315-16 (1942) ("Every person who is present at

the commission of a [crime], encouraging or inciting the same by words, gestures, looks or signs,

or who in any way, or *by any means*, countenances or approves the same is, in law, assumed to

be an aider and abettor . . . ." (emphasis added) (quoting Brown v. Commonwealth, 130 Va. 733,

736, 107 S.E. 809, 810 (1921))).  Whether a person aided or abetted another in the commission

of a crime is a question that may be determined by circumstantial as well as by direct evidence.

Foster, 179 Va. at 99, 18 S.E.2d at 316 ("The status of the accused may be established both by

circumstantial evidence and by direct evidence.").

In this case, a reasonable factfinder could conclude from the circumstantial evidence

presented that appellant aided and abetted in the commission of the charged offenses.  While the

perpetrator attempted to gain entry into the victim's apartment, appellant waited a short distance

away, close enough for the perpetrator to reach him when he gained access, but far enough away

to avoid drawing unnecessary attention to the perpetrator as he entered the apartment through a

window.  Ponce testified that no sooner had the perpetrator gained entry into the apartment did

he then exit the front door, walk a short distance around the corner of the building, and return with two men, including appellant.  All three men entered the victim's apartment, and in short order began moving electronics and jewelry from the victim's upstairs bedroom to the foyer near the front door.  It is not known from the record which men moved which items, nor could a factfinder say with absolute certainty that appellant actively moved any of the objects later located near the apartment's front door.  However, a rational factfinder could draw the reasonable inference from appellant's location when the perpetrator gained entry into the apartment – close but inconspicuous – and his presence as the apartment was "ransacked" and staged to effectuate a quick departure with any items of value, that, at least, appellant was aware of the perpetrator's criminal intent.  Nothing in the record suggests that appellant attempted to dissuade the perpetrator from committing the criminal offenses.  Pugliese, 16 Va. App. at 94, 428 S.E.2d at 25.

Taken with his knowledge of the perpetrator's criminal intent, appellant's actions upon exiting the apartment provide supporting evidence that he shared the perpetrator's criminal intent.  Ponce described how all three men exited the apartment as police began arriving on scene.  Appellant was the last to exit, and by the time he did so, "there really wasn't anywhere for him to go."  Turning from the apartment, appellant immediately approached the nearest apartment (Ponce's) and began knocking on the door.  Ponce testified that she did not know appellant, and appellant gave no answer when police questioned whether he "was the person [who] lived" in the apartment.

When sitting as factfinder, the trial court possesses not only a specialized knowledge of the law but also "ordinary knowledge of men and affairs," Foster, 179 Va. at 100, 18 S.E.2d at 316, and is permitted to draw reasonable inferences from the circumstantial evidence.  Viewing the evidence in the light most favorable to the Commonwealth, a reasonable factfinder could

infer that when police arrived on scene, appellant "immediately walked to the first [available] door . . . and started knocking on it" in order to avoid police suspicion of his involvement in the breaking and entering – and doing so, the factfinder could view appellant's evasiveness as circumstantial evidence of his guilty knowledge. While mere presence at the scene is insufficient to sustain a conviction as a principal in the second degree, appellant's knowledge of the perpetrator's criminal intent, appellant's failure to discourage completion of the crime, and appellant's subsequent attempt to conceal his involvement in the crime provide sufficient evidence from which a reasonable factfinder could find appellant guilty as a principal in the second degree.

CONCLUSION

For the foregoing reasons, we affirm appellant's convictions.

<u>Affirmed.</u>