COURT OF APPEALS OF VIRGINIA


Present: Judges Petty, Alston and Senior Judge Willis
Argued at Richmond, Virginia


DONTA TERMAINE SMITH, S/K/A
  DONTA TERMINE SMITH

                                                        OPINION BY
v.      Record No. 0808-09-2              JUDGE ROSSIE D. ALSTON, JR.
                                                     AUGUST 17, 2010

COMMONWEALTH OF VIRGINIA


                FROM THE CIRCUIT COURT OF THE CITY OF RICHMOND
                              Margaret P. Spencer, Judge

            Diane M. Abato (Abato & Davis, on brief), for appellant.

            Robert H. Anderson, III, Senior Assistant Attorney General
            (Kenneth T. Cuccinelli, II, Attorney General, on brief), for
            appellee.


        Donta Termaine Smith (appellant) appeals his convictions of abduction with intent to

defile, in violation of Code § 18.2-48, and attempted rape, in violation of Code §§ 18.2-26 and

18.2-61.  Appellant contends the evidence is insufficient to prove he committed the offenses.

Appellant further contends the trial court erred when it denied appellant's motion to strike the

charge of abduction with intent to defile, arguing the evidence showed the restraint applied to the

victim was merely incidental to the attempted rape.  For the reasons that follow, we hold the trial

court did not err, and we affirm appellant's convictions.

                                    I.  BACKGROUND

        On appeal, "we review the evidence in the 'light most favorable' to the Commonwealth."

Pryor v. Commonwealth, 48 Va. App. 1, 4, 628 S.E.2d 47, 48 (2006) (quoting Commonwealth v.

Hudson, 265 Va. 505, 514, 578 S.E.2d 781, 786 (2003)).  "Viewing the record through this

evidentiary prism requires us to 'discard the evidence of the accused in conflict with that of the

Commonwealth, and regard as true all the credible evidence favorable to the Commonwealth and all fair inferences to be drawn therefrom.'" Cooper v. Commonwealth, 54 Va. App. 558, 562, 680 S.E.2d 361, 363 (2009) (quoting Parks v. Commonwealth, 221 Va. 492, 498, 270 S.E.2d 755, 759 (1980) (emphasis omitted)).

So viewed, the evidence showed that the sixteen-year-old victim (M.P.) knew appellant through his girlfriend, Moesha Parker (Parker). Parker and appellant lived together. M.P. frequently visited appellant's house, where Parker would style M.P.'s hair. However, M.P. never went to appellant's house unless Parker was there.

On May 9, 2008, M.P. was walking past appellant's home on her way to a friend's house when appellant yelled to M.P. from his bedroom window. Appellant told M.P. that Parker wanted to see her. M.P. entered appellant's house through the back door and looked around but did not see Parker. When M.P. asked appellant where Parker was, he responded that she was "in the room," referring to the bedroom. When M.P. went into the bedroom, appellant followed her in and shut the door behind him. Appellant then threw M.P. on the bed and told her that he had "wanted" her for a long time. He held M.P.'s hands down with one of his hands and attempted to unbutton M.P.'s pants with the other hand. M.P. told appellant to get off her and attempted to push him off. Appellant opened M.P.'s shirt and fondled her breast. He also "put a hickey on [her] neck." Appellant removed his penis from his pants and tried to push M.P's head down in an effort to force her to perform oral sex. Appellant offered to pay M.P. if she would orally sodomize him and let him orally sodomize her, which M.P. refused. According to M.P., she struggled with appellant for what "seemed like a long time." At some point, M.P. heard a car's horn from outside, and she told appellant that it might be her friends looking for her. Appellant let her go, stating, "I ain't try to rape you. And you come back. Don't tell nobody."

- 2 -

M.P. immediately went to a friend's house and told her friend what happened. She also told her mother. Officer A. Laury (Laury) responded to the incident. He first spoke with M.P.'s mother and then with M.P. According to Laury, M.P. "was breaking down in tears" and "was very emotional and upset." Laury also observed "redness on one side of [M.P.'s] neck." Officer B. Huddleston (Huddleston) also spoke with M.P. just after the incident and corroborated Laury's account.

At appellant's trial, both Laury and Huddleston testified that when they spoke with M.P., she told them appellant rubbed his penis on her lips and mouth. At trial, M.P. admitted that appellant never put his penis on her mouth, although she told Officers Laury and Huddleston just after the incident that appellant did. M.P. explained the discrepancy, stating, "I was scared. I didn't know how to say it. I was embarrassed."

Appellant's twelve-year-old daughter (D.S.) also testified. D.S. stated that she was at home the day the incident occurred because she was ill. She recalled M.P. knocking on the front door and asking appellant for a cigarette. According to D.S., appellant gave M.P. a cigarette, M.P. stayed for approximately five minutes, and then M.P. left. D.S. also testified that shortly after M.P. left, M.P.'s mother came to their house and said to appellant, "You supposed to rape my daughter or something like that." D.S. admitted that when police arrived at her house, she heard their questions to appellant and his answers before providing her account of the incident to police.

M.P. testified that she never saw D.S. while she was in appellant's house. M.P. also testified that she does not smoke and was not at appellant's house for a cigarette.

In his defense, appellant called three witnesses, including Parker, who said, among other things, they had seen M.P. smoking cigarettes before.

At the close of the Commonwealth's case-in-chief and again at the close of all the evidence, appellant moved to strike the evidence, arguing M.P.'s testimony was inherently incredible given the discrepancies between her account of the incident to police and her testimony at trial. The trial court denied the motion, noting the credibility of the witnesses is an issue for the jury.

Appellant further argued, at trial and in a motion to set aside the verdict, that the trial court should strike the charge of abduction with intent to defile because the evidence showed the restraint appellant applied to M.P. was merely incidental to the crime of attempted rape and not a separate punishable offense. According to appellant,

> [M.P.] was very clear when she said[, "]I have to go, those are my friends outside.[" Appellant] let her go and asked if she was coming back. . . . [T]here was no driving her out of the city, no tying her up, there was no extensive and lengthy abduction, no asportation; there was the attempted rape and then it was over.

The Commonwealth, arguing against the renewed motion to strike the evidence, noted,

> [T]he only force that would be required to accomplish the rape would be for [appellant] to hold [M.P.] down. He did, in fact, use that force in the course of attempting the rape. However, he did much more than that. . . . [T]hreat or deception[] can also be used to detain someone, thereby, abducting them. He brought her, maybe he didn't take her a long distance, but he took her into a very different environment. He took her from outside during the day, where neighbors could see what was going on, to inside into the comfort of his own bedroom, where he felt like he could get away with whatever he wanted to safely.

The trial court denied appellant's motions, stating, "[T]here were facts sufficient to show that the abduction or the detention here was separate and apart from rather than incidental to the attempted rape. So for that reason the motion [to set aside the verdict] is denied."[1] A jury convicted appellant of both offenses.

---

[1] The trial court, providing its ruling at a hearing on the motion to set aside the verdict, noted that appellant could have requested a jury instruction on the issue of incidental detention

II.  ANALYSIS

A.  Sufficiency of the Evidence

Appellant first contends the evidence is insufficient to support his convictions of abduction with intent to defile and attempted rape.  Code § 18.2-47(B) defines abduction:  "Any person who, by force, intimidation or deception, and without legal justification or excuse, seizes, takes, transports, detains or secretes another person with the intent to subject him to forced labor or services shall be deemed guilty of 'abduction.'"  Code § 18.2-48 classifies abduction "of any person with intent to defile such person" as a Class 2 felony.  Code §§ 18.2-26 and –61 define attempted rape as an attempt to cause a complaining witness "to engage in sexual intercourse . . . against the complaining witness's will, by force, threat or intimidation . . . or . . . through the use of the complaining witness's mental incapacity or physical helplessness."  Appellant does not challenge the sufficiency of the evidence to prove any specific element of these offenses; rather, appellant contends that M.P.'s testimony is inherently incredible.

"The credibility of the witnesses and the weight accorded the evidence are matters solely for the fact finder who has the opportunity to see and hear that evidence as it is presented."  Sandoval v. Commonwealth, 20 Va. App. 133, 138, 455 S.E.2d 730, 732 (1995) (citing Schneider v. Commonwealth, 230 Va. 379, 382, 337 S.E.2d 735, 736-37 (1985); Carter v. Commonwealth, 223 Va. 528, 532, 290 S.E.2d 865, 867 (1982)).  Where credibility issues are resolved by the jury in favor of the Commonwealth, those findings will not be disturbed on appeal unless plainly wrong.  Corvin v. Commonwealth, 13 Va. App. 296, 299, 411 S.E.2d 235,

---

but he neither requested a jury instruction on the issue nor objected to the instructions given. Despite appellant's contention that the trial court's ruling was based solely on appellant's failure to request a jury instruction on the issue, the record is clear that the trial court found "facts sufficient to show that the abduction or the detention here was separate and apart from rather than incidental to the attempted rape."

237 (1991) (citing Castaneda v. Commonwealth, 7 Va. App. 574, 584, 376 S.E.2d 82, 87 (1989) (*en banc*); Smith v. Commonwealth, 7 Va. App. 310, 314, 373 S.E.2d 340, 343 (1988)).

> When the law says that it is for triers of the facts to judge the credibility of a witness, the issue is not a matter of degree. So long as a witness deposes as to facts[,] which, if true, are sufficient to maintain their verdict, then the fact that the witness' credit is impeached by contradictory statements affects only the witness' credibility; contradictory statements by a witness go not to competency but to the weight and sufficiency of the testimony. If the trier of the facts sees fit to base the verdict upon that testimony there can be no relief in the appellate court.

Swanson v. Commonwealth, 8 Va. App. 376, 379, 382 S.E.2d 258, 259 (1989) (citing Simpson v. Commonwealth, 199 Va. 549, 557-58, 100 S.E.2d 701, 707 (1957)).

With regard to the credibility issue, appellant notes that M.P. told police that appellant put his penis on her mouth and lips, but at trial, she admitted this was not true. M.P. explained the discrepancy, stating, "I was scared. I did not know how to say it. I was embarrassed."

It is well established that it is for triers of facts to resolve conflicting accounts within a witness' testimony. Id. Further, this Court has clearly recognized that a "victim's youth, fright and embarrassment [may] provide[] the jury with an acceptable explanation" for a victim's otherwise unexplainable statements or actions. Corvin, 13 Va. App. at 299, 411 S.E.2d at 237 (justifying the jury's determination that the teenage victim was credible despite his fourteen-month delay in reporting a sexual assault).

Here, the jury heard M.P.'s conflicting accounts. In its role as fact finder, the jury alone was entitled to judge M.P.'s credibility given the discrepancy and assign her testimony what weight it deemed appropriate.

Moreover, the officer's testimony and M.P.'s own actions corroborated the remainder of M.P.'s account of the incident. M.P. immediately notified her mother and a friend about the incident. See Wilson v. Commonwealth, 46 Va. App. 73, 83-84, 615 S.E.2d 500, 504-05 (2005)

(noting that a recent complaint of sexual assault is probative of the victim's credibility). Further, Laury stated that when he interviewed M.P., she was visibly upset and "breaking down in tears." He also observed a "hickey" on M.P.'s neck. Although appellant's daughter, D.S., testified that she witnessed M.P. ask appellant for a cigarette, smoke the cigarette, and leave without incident, D.S. also admitted that she heard police question appellant about the incident and heard appellant's answers to the questions before she provided her account to police. In convicting appellant, the jury apparently believed M.P. and not D.S.

Finally, the fact that several witnesses testified that they had seen M.P. smoking cigarettes when M.P. testified that she does not smoke does not render her testimony inherently incredible. The trier of fact is not required to accept a party's evidence in its entirety, Barrett v. Commonwealth, 231 Va. 102, 107, 341 S.E.2d 190, 193 (1986) (citing Belton v. Commonwealth, 200 Va. 5, 9, 104 S.E.2d 1, 4 (1958)), but is free to believe and disbelieve in part or in whole the testimony of any witness, Rollston v. Commonwealth, 11 Va. App. 535, 547, 399 S.E.2d 823, 830 (1991) (citing Durham v. Commonwealth, 214 Va. 166, 169, 198 S.E.2d 603, 606 (1973); Upshur v. Commonwealth, 170 Va. 649, 655, 197 S.E. 435, 437 (1938)). The Commonwealth's evidence was competent, was not inherently incredible, and was sufficient to prove the elements of each offense beyond a reasonable doubt.

B. Incidental Detention Doctrine

Appellant further contends that even if M.P.'s testimony is to be believed, the trial court erred in denying his motion to strike the abduction charge because the evidence showed the restraint appellant applied to M.P. was merely incidental to the attempted rape, not punishable as a separate crime.[2]

---

[2] Appellant argues (1) the trial court erred in finding that the incidental detention doctrine did not apply when it allowed both charges to be presented to the jury; (2) the trial court violated the appellant's due process rights when it allowed both the attempted rape charge and the

"[T]he General Assembly 'did not intend to make the kind of restraint which is an intrinsic element of crimes such as rape, robbery, and assault a criminal act, punishable as a separate offense.'" Hoyt v. Commonwealth, 44 Va. App. 489, 492, 605 S.E.2d 755, 756 (2004) (quoting Brown v. Commonwealth, 230 Va. 310, 314, 337 S.E.2d 711, 713 (1986)).

> "[O]ne accused of abduction by detention and another crime involving restraint of the victim, both growing out of a continuing course of conduct, is subject upon conviction to separate penalties for separate offenses only when the detention committed in the act of abduction is separate and apart from, and not merely incidental to, the restraint employed in the commission of the other crime."

Id. at 493, 605 S.E.2d at 757 (quoting Brown, 230 Va. at 314, 337 S.E.2d at 713-14). "Whether an abduction is merely incidental to another crime is a question of law. However, because no two crimes are exactly alike, determining whether an abduction is incidental necessarily requires consideration of the historical facts of each case." Id. at 496 n.4, 605 S.E.2d at 758 n.4. Under this standard of review, "[w]e defer to the trial court's findings of historical fact, but we review *de novo* the trial court's application of those facts to the law." Id.

> "[F]our factors are central to" determining whether or not an abduction or kidnapping is incidental to another crime. "Those factors are: (1) the duration of the detention or asportation; (2) whether the detention or asportation occurred during the commission of a separate offense; (3) whether the detention or asportation which occurred is inherent in the separate offense; and (4) whether the asportation or detention created a significant danger to the victim independent of that posed by the separate offense."

Id. at 494, 605 S.E.2d at 757 (quoting Gov't of Virgin Islands v. Berry, 604 F.2d 221, 227 (3d Cir. 1979)) (citations omitted).

> The Berry analysis states in summary fashion the factors Virginia courts have employed on a case-by-case basis in

abduction with intent to defile charge to be presented to the jury; and (3) the trial court erred when it refused to strike the abduction with intent to defile charge at appellant's motion to strike. Because appellant provides the same argument in support of each of these questions presented, we similarly address each of these arguments with a single analysis.

determining whether an abduction is incidental to another crime. See, e.g., Powell v. Commonwealth, 261 Va. 512, 541, 552 S.E.2d 344, 360-61 (2001) (upholding conviction for abduction as more than necessary to accomplish rape where the defendant ordered [the] victim to go to a more secluded part of her home and bound and detained her for a lengthy period of time); Cardwell v. Commonwealth, 248 Va. 501, 511, 450 S.E.2d 146, 153 (1994) (upholding conviction for abduction because it was "greater than the restraint intrinsic in a robbery" where [the] defendant transported [the] victim away from the robbery scene, which robbery was already complete, and murdered him); Hoke v. Commonwealth, 237 Va. 303, 311, 377 S.E.2d 595, 600 (1989) (upholding conviction for abduction because it was not inherent in the other crimes of rape and robbery where [the] victim's hands were tightly bound, mouth was gagged, and detention was for lengthy period of time); Brown, 230 Va. at 314, 337 S.E.2d at 714 (upholding conviction where abduction, which was initial offense, "was remote in terms of time and distance from the sexual assault and, in terms of quality and quantity, the acts of force and intimidation employed in the abduction were separate and apart from the restraint inherent in the commission of the rape"); Bell v. Commonwealth, 22 Va. App. 93, 96-98, 468 S.E.2d 114, 116 (1996) (upholding conviction for abduction because [the] jury could have found that it was "separate and apart from the restraint inherent in either the sexual assault or the robbery" or that it was for the purpose of avoiding detection where, once robbery was completed, the victim was pulled to one side of the car, made to lie down, and sexually assaulted); Phoung v. Commonwealth, 15 Va. App. 457, 462, 424 S.E.2d 712, 715 (1992) (abduction upheld because it involved restraint greater than that "inherent in the act of robbery" where [the] defendant bound one victim and transported him from a lower level of the house to an upper level and tied another victim to a bed and covered her with a blanket); Coram v. Commonwealth, 3 Va. App. 623, 626, 352 S.E.2d 532, 534 (1987) (upholding conviction for abduction because it "substantially increased the risk of harm to the victim" where [the] victim [was] dragged twenty feet to a secluded area [before she was sexually assaulted]).

Id. at 495-96, 605 S.E.2d at 757-58; cf. id. at 496, 605 S.E.2d at 758 (reversing conviction for abduction because the defendant's act of detaining a convenience store employee "for a few moments by threatening him with a gun and forc[ing him] to move . . . did no more than was necessary to accomplish the robbery"). With these principles in mind, we turn to the instant case.

- 9 -

Here, the evidence showed that appellant lured M.P. into his home and into his bedroom by placing her under the false impression that Parker was in the bedroom and wanted to see her. Once M.P. was in the bedroom, appellant shut the door behind him and blocked M.P. from leaving. Although the duration of the detention and the distance of asportation may have been slight, appellant's acts of luring M.P. into his home and into his bedroom were not inherent in the attempted rape. In fact, these acts posed an additional danger to M.P. because they rendered her unable to escape or call for help. See Coram, 3 Va. App. at 626, 352 S.E.2d at 533-34 (noting that the defendant's act of transporting the victim "from a location that was lighted and visible from the street to one out of sight of potential passersby . . . substantially increased the risk of harm to the victim by decreasing the possibility of detecting his criminal activity"). A reasonable fact finder could infer from the evidence presented that the detention was accomplished to avoid detection of the attempted rape, creating a danger independent of that imposed by the separate offense. Id. at 626, 352 S.E.2d at 534.

Certainly, appellant's initial deceptive acts *assisted* him in accomplishing the attempted rape; however, the ultimate determination of whether the acts were incidental to the separate offense "focuses not on whether the restraint was *merely useful* to perpetrating a detention-plus crime – but whether the restraint was 'intrinsic' to, or 'inherent' in, the detention-plus crime." Pryor, 48 Va. App. at 6, 628 S.E.2d at 49 (emphasis added) (citations omitted). The essence of appellant's deception was the perpetration of separate and distinct criminal wrongs against the victim. The fact finder could reasonably conclude that the detention involved herein was not a mere prelude to appellant's commission of the offense of attempted rape, but rather that the acts of force and intimidation employed in the abduction were separate and apart from the restraint inherent in the commission of the attempted rape.

The case of Jerman v. Director, 267 Va. 432, 439, 593 S.E.2d 255, 259 (2004), further dictates our analytical framework. In Jerman, the Supreme Court of Virginia reaffirmed the principle that "the asportation or detention [necessary to accomplish an abduction] can be accomplished by either force, intimidation, *or deception*." Id. (emphasis added).

In Jerman, the habeas corpus petitioner alleged his trial counsel was ineffective in arguing against an abduction allegation, which the petitioner argued, was based solely on the restraint inherent in the physical attack on the victim. Id. at 438, 593 S.E.2d at 258-59. The evidence showed the petitioner was involved in a scheme to convince the victim to come to a co-defendant's home "on the pretext that some of [the co-defendant's] friends were there and they 'all wanted to trip.'" Id. at 439, 593 S.E.2d at 259. When the victim arrived, the petitioner and several others were waiting with baseball bats, which they used to beat the victim to death. Id. at 439-40, 593 S.E.2d at 259. The Jerman Court held, in relevant part, that the "abduction was accomplished through asportation by deception" and "the evidence . . . proved abduction by deception *before* the assault." Id. at 439-40, 593 S.E.2d at 259-60 (emphasis added). Here, like in Jerman, appellant's act of luring M.P. into his home occurred *before* the separate offense of attempted rape.

Under the facts of this case, the evidence showed the detention by deception posed an additional danger to the victim, was accomplished before the attempted rape, and was not intrinsic to or inherent in the separate offense. Accordingly, the trial court did not err in finding the facts sufficient to show the abduction or detention was separate and apart from, rather than incidental to, the attempted rape.

## III.  CONCLUSION

For these reasons, we hold the trial court did not err, and we affirm the convictions.

<u>Affirmed.</u>