COURT OF APPEALS OF VIRGINIA

Present: Judges Chafin, Russell and Senior Judge Clements
Argued at Richmond, Virginia

PAUL WAYNE BAGLEY

v.      Record No. 1803-17-2

COMMONWEALTH OF VIRGINIA

MEMORANDUM OPINION[*] BY
JUDGE TERESA M. CHAFIN
OCTOBER 23, 2018

FROM THE CIRCUIT COURT OF PRINCE EDWARD COUNTY
Kimberley S. White, Judge

M. Paul Valois (James River Legal Associates, on brief), for
appellant.

Victoria Johnson, Assistant Attorney General (Mark R. Herring,
Attorney General, on brief), for appellee.


After a jury trial, the Circuit Court of Prince Edward County convicted Paul Wayne

Bagley of rape, forcible sodomy, two counts of animate object sexual penetration, carnal

knowledge of a minor, and three counts of taking indecent liberties with a minor. On appeal,

Bagley contends that the evidence presented at his trial was insufficient to support his rape,

forcible sodomy, and animate object sexual penetration convictions because it failed to establish

that he used "force, threat, or intimidation" to coerce the victim to perform sexual acts against

her will. He also argues that the circuit court erred by basing all of his convictions on the

"uncorroborated" and "inherently incredible" testimony of the victim. For the following reasons,

we affirm Bagley's convictions.

---

[*] Pursuant to Code § 17.1-413, this opinion is not designated for publication.

## I.  BACKGROUND

"In accordance with established principles of appellate review, we state the facts in the light most favorable to the Commonwealth, the prevailing party in the trial court[, and] accord the Commonwealth the benefit of all inferences fairly deducible from the evidence."  Riner v. Commonwealth, 268 Va. 296, 303, 601 S.E.2d 555, 558 (2004).  So viewed, the evidence is as follows.

J., the victim in the present case, was born on January 15, 1992.  When J. was three years old, Bagley began living with her family.  Bagley and J.'s mother had a long-term romantic relationship, and Bagley essentially acted as J.'s stepfather even though he was not married to her mother.  Bagley was the only "father figure" in J.'s life, and she called him "daddy."  Bagley frequently supervised J. while her mother worked.

In 2004, when J. was in the sixth grade, Bagley put his fingers and tongue inside of J.'s vagina.  Bagley stopped the sexual activity when J. started crying.  He told her that she could tell her mother about what had occurred, but warned her about the consequences of doing so.  Specifically, Bagley told J., "You can call your mom if you want but if you call her and you tell her, she'll probably break up with me or your granddad won't like it and he'll take care of me, or I'll end up in jail, and . . . I won't be here for you anymore."  J. did not tell anyone about the sexual abuse for nine years.

Bagley continued to sexually abuse J. following the initial 2004 incident.  Bagley put his fingers inside of J.'s vagina every "couple of months" after the initial abuse.  Approximately two years later, when J. was in the eighth grade, Bagley had vaginal sexual intercourse with her for the first time.  At some point, J. started performing fellatio on Bagley.  Later, they also had anal intercourse.  Bagley's sexual abuse became more frequent as time passed.  Bagley began to abuse J. "every month or so," and eventually, he abused her "about every two days."

When J. was seventeen years old, she became pregnant with Bagley's child. In 2010, J. gave birth to a full-term baby when she was eighteen years and three months old. Bagley impregnated J. again shortly after the birth of their first child, and J. gave birth to their second child in 2011. J. initially concealed the fact that Bagley was the father of her children from her family and friends.

In August of 2013, J. told her mother that Bagley had been sexually abusing her. She then reported Bagley's conduct to the police. J. told the police that she never consented to any sexual activity with Bagley. J. explained that Bagley made her "feel bad" if she did not have sex with him. J. also told the police that she was afraid that Bagley would tell her mother about their previous sexual activities if she did not have sex with him, and thereby destroy her family. Notably, J. also told the police that Bagley had sexual intercourse with her for the first time in 2004 and that he had sexual intercourse with her seven more times that year. J. obtained a protective order against Bagley based on her allegations.

Despite the issuance of the protective order, J. and her children moved in with Bagley after she made her initial report to the police. During the time when she lived with Bagley, J. displayed affection for him when they were in public, and she told her friends that they planned to get married. She also sent pornographic images of herself to Bagley.

At Bagley's trial, J. testified about her sexual abuse. Her prior written statement to the police was also admitted into evidence without objection. J. acknowledged that her statement to the police pertaining to the first time that Bagley had sexual intercourse with her was false, and she clarified that she began having sexual intercourse with Bagley when she was in the eighth grade. J. also admitted that Bagley did not use force or threaten her with physical harm in order to coerce her to perform sexual acts. J. testified, however, that she never consented to any of the

sexual conduct that she engaged in with Bagley and that she was afraid of him. J. testified that Bagley manipulated her to the point "where [she] did anything he wanted to please him."

J. explained that she did not promptly report Bagley's sexual abuse because she was "afraid that it was going to break up [her] family." J. also addressed why she lived with Bagley after she reported the sexual abuse to the police. J. explained that her children needed a place to live and that she feared Bagley would have attempted to obtain custody of the children if she did not live with him. J. was afraid that Bagley would sexually abuse their daughter if he obtained custody of her.

In addition to J.'s testimony, the Commonwealth presented testimony from one of J.'s friends regarding a conversation that she had with Bagley around the time when J. reported the sexual abuse to the police. On August 14, 2013, Bagley called J.'s friend to ask her if she had recently talked to J. Bagley told the friend that he and J. "were in love" and that "[t]hey had two kids together." Bagley then told the friend that he and J. had been in a "relationship" since she was eleven years old.

At the close of the Commonwealth's case-in-chief, Bagley moved to strike the evidence against him. Citing J.'s inconsistent testimony and her actions after she reported the sexual abuse to the police, Bagley maintained that J. was not a credible witness. Bagley also claimed that the evidence presented by the Commonwealth failed to establish that he used force to coerce J. to perform sexual acts with him. Specifically, Bagley argued, "you have a woman who by her own admissions indicated that . . . [s]he was never forced. There were no weapons involved. She was never held down at any point when the sexual intercourse occurred with [him]." The circuit court denied Bagley's motion.

Bagley renewed his motion to strike after presenting defense evidence. In his renewed motion, Bagley indicated that he "would incorporate many of the same arguments [he] made at

[his] first motion to strike." He then argued that J.'s testimony was not credible due to the "significant inconsistencies" in her testimony. Bagley emphasized that J. initially gave an inconsistent statement to the police pertaining to the date when Bagley first had sexual intercourse with her. He also argued that J.'s actions following her initial report of abuse weakened her credibility. Bagley did not argue, however, that the evidence failed to establish that he coerced J. to engage in sexual acts through force, threat, or intimidation.

The circuit court denied Bagley's renewed motion to strike, noting that the case would "rise and fall" on J.'s testimony. Ultimately, the jury accepted J.'s testimony and convicted Bagley of the charged offenses. This appeal followed.

## II.  ANALYSIS

On appeal, Bagley contends that the evidence was insufficient to support his convictions. Bagley argues that the evidence failed to establish that he coerced J. to engage in sexual acts with him through the use of "force, threat, or intimidation." He also maintains that J.'s testimony was inherently incredible. Upon review, we conclude that Bagley's first appellate argument is procedurally defaulted. Additionally, we conclude that the evidence presented in this case failed to establish that J.'s testimony was inherently incredible as a matter of law.

### A.  BAGLEY'S ARGUMENT PERTAINING TO THE LACK OF EVIDENCE PROVING "FORCE, THREAT, OR INTIMIDATION" IS DEFAULTED

Bagley contends that the evidence failed to establish the elements of his rape, forcible sodomy, and animate object sexual penetration convictions. Specifically, he argues that the evidence failed to prove that he used "force, threat, or intimidation" to coerce J. to engage in sexual conduct against her will. This argument is procedurally defaulted.

> In a jury trial, the defendant preserves his objections to the sufficiency of the evidence in a motion to strike at the conclusion of the Commonwealth's case if he elects to not introduce evidence of his own, or [in a] motion to strike at the conclusion of all the

evidence or a motion to set aside the verdict if he does elect to introduce evidence of his own.[1]

Commonwealth v. Bass, 292 Va. 19, 33, 786 S.E.2d 165, 173 (2016).

"[A] motion to strike the evidence presented after the Commonwealth's case-in-chief is a separate and distinct motion from a motion to strike all the evidence, or a motion to set aside an unfavorable verdict, made after the defendant has elected to introduce evidence on his own behalf." Murillo-Rodriguez v. Commonwealth, 279 Va. 64, 82, 688 S.E.2d 199, 209 (2010).

> [W]hen a defendant elects to introduce evidence [on] his own behalf after the denial of a motion to strike the Commonwealth's evidence, any further challenge to the sufficiency of the evidence at trial or on appeal is to be determined from the entire record, because by putting on additional evidence, the defendant waives his ability to challenge the sufficiency of the Commonwealth's evidence in isolation.

Id. at 74, 688 S.E.2d at 204-05. "[T]he defendant must afford the trial court the opportunity upon proper motion to decide the question of the sufficiency of all the evidence, and . . . if he fails to do so, he has waived his right to challenge the sufficiency of the evidence on appeal." Id. at 80, 688 S.E.2d at 208.

In the present case, Bagley made a motion to strike at the conclusion of the Commonwealth's case-in-chief. In that motion, he argued that the evidence presented by the Commonwealth failed to establish that he coerced J. to perform sexual acts through the use of force. He also argued that J.'s testimony was incredible. After Bagley presented evidence on his own behalf, he made a renewed motion to strike. Although Bagley indicated that he would "incorporate many of the same arguments [he] made at [his] first motion to strike," his argument on the renewed motion only addressed the credibility of J.'s testimony. Bagley did not argue that the evidence failed to establish that he coerced J. to engage in sexual acts through the use of

---

[1] Although Bagley filed a motion to set aside the jury's verdict, his motion did not address the sufficiency of the evidence supporting his convictions.

force, threat, or intimidation. By failing to present this argument in his renewed motion to strike, Bagley has waived his appellate argument based on these grounds.[2]

### B. J.'S TESTIMONY WAS NOT INHERENTLY INCREDIBLE AS A MATTER OF LAW

Bagley also contends that the evidence was insufficient to support all of his convictions because J.'s testimony was inherently incredible. Unlike his argument pertaining to the evidence establishing the use of "force, threat, or intimidation," Bagley presented this argument in both his initial and renewed motions to strike. Bagley argues that J.'s testimony was uncorroborated by additional evidence. He also emphasizes the inconsistency between J.'s testimony at trial and her initial report to the police, and notes that she failed to provide definitive dates of when the sexual abuse at issue occurred.

"When the sufficiency of the evidence is challenged on appeal, the judgment of the trial court will not be set aside unless it appears from the evidence that the judgment is 'plainly wrong or without evidence to support it.'" Wilson v. Commonwealth, 46 Va. App. 73, 87, 615 S.E.2d 500, 507 (2005) (quoting Martin v. Commonwealth, 4 Va. App. 438, 443, 358 S.E.2d 415, 418 (1987)). "[G]reat deference must be given to the factfinder who, having seen and heard the witnesses, assesses their credibility and weighs their testimony." Id. (quoting Walton v. Commonwealth, 255 Va. 422, 426, 497 S.E.2d 869, 871 (1988)). "It is well established that it is for triers of facts to resolve conflicting accounts within a witness' testimony." Smith v. Commonwealth, 56 Va. App. 711, 719, 697 S.E.2d 14, 18 (2010). "[T]he conclusions of the fact

---

[2] Even if we were to assume that Bagley intended to incorporate all of his arguments from his initial motion to strike in his renewed motion, we note that Bagley did not argue that the evidence failed to establish that he used threats or intimidation to coerce J. to perform sexual acts. Rather, he only argued that the Commonwealth's evidence failed to prove that he used force to coerce J. to perform sexual acts. "Making one specific argument on an issue does not preserve a separate legal point on the same issue for review." Edwards v. Commonwealth, 41 Va. App. 752, 760, 589 S.E.2d 444, 448 (2003) (*en banc*); see also Rule 5A:18.

finder on issues of witness credibility may be disturbed on appeal only when we find that the witness' testimony was 'inherently incredible, or so contrary to human experience as to render it unworthy of belief.'" Ragsdale v. Commonwealth, 38 Va. App. 421, 429, 565 S.E.2d 331, 335 (2002) (quoting Ashby v. Commonwealth, 33 Va. App. 540, 548, 535 S.E.2d 182, 187 (2000)).

We acknowledge that certain circumstances in this case may have challenged J.'s credibility. Despite these circumstances, J.'s testimony was not inherently unbelievable. The jury heard J.'s testimony, observed her demeanor as she testified, and concluded that her testimony was credible. Ample evidence supported this decision.

Contrary to Bagley's argument on appeal, J.'s testimony was corroborated by additional evidence.[3] J. gave birth to two of Bagley's children, confirming that she and Bagley had a sexual relationship that began when she was, at most, seventeen years old. Moreover, Bagley told J.'s friend that he was in love with J., that he and J. had two children together, and that they had been in a "relationship" since J. was eleven years old.

Although some of J.'s actions called her credibility into question, "this Court has clearly recognized that a 'victim's youth, fright and embarrassment [may] provide[] the jury with an acceptable explanation' for a victim's otherwise unexplainable statements or actions." Smith, 56 Va. App. at 719, 697 S.E.2d at 18 (quoting Corvin v. Commonwealth, 13 Va. App. 296, 299, 411 S.E.2d 235, 237 (1991)). J. testified that Bagley had manipulated her to the point "where [she] did anything he wanted to please him." She also explained that she did not report Bagley's sexual abuse for many years because she feared that doing so would have destroyed her family. J. acknowledged that she lived with Bagley after she reported the sexual abuse to the police, but explained that she did so in order to secure a home for her children and prevent Bagley from

---

[3] We note that "a conviction for rape and other sexual offenses may be sustained solely upon the uncorroborated testimony of the victim." Wilson, 46 Va. App. at 87, 615 S.E.2d at 507.

obtaining sole custody of them. The jury accepted J.'s explanations of her actions, and its decision to do so was not plainly wrong.

While Bagley argues that J.'s testimony was incredible due to her inability to recall the specific dates of the sexual abuse, Virginia courts have consistently held that time is not of the essence in cases involving the sexual abuse of a child. See Waitt v. Commonwealth, 207 Va. 230, 235, 148 S.E.2d 805, 808 (1966); Marlowe v. Commonwealth, 2 Va. App. 619, 622, 347 S.E.2d 167, 169 (1986). J. testified that Bagley initially abused her when she was in the sixth grade and that he had sexual intercourse with her for the first time when she was in the eighth grade. J. also testified that Bagley regularly abused her over a nine-year period with increasing frequency. The jury weighed J.'s inability to recall the exact dates of the sexual abuse in light of the circumstances of the case, and concluded that this inability did not render her testimony incredible.

We will not disturb the jury's credibility determination in this case. J.'s testimony was not inherently incredible or unworthy of belief. See Ragsdale, 38 Va. App. at 429, 565 S.E.2d at 335. Considered as a whole, J.'s testimony was competent, credible, and sufficient to prove Bagley's guilt beyond a reasonable doubt.

### III. CONCLUSION

For the reasons stated, we affirm Bagley's convictions.

Affirmed.