COURT OF APPEALS OF VIRGINIA

Present:   Judges Beales, Ortiz and Lorish
Argued at Norfolk, Virginia


QUINTEZ REPHAEL RAVEN

MEMORANDUM OPINION* BY
v.        Record No. 1108-21-1        JUDGE LISA M. LORISH
                                       AUGUST 23, 2022
COMMONWEALTH OF VIRGINIA


FROM THE CIRCUIT COURT OF THE CITY OF NORFOLK
Everett A. Martin, Jr., Judge

Daymen W.X. Robinson (Law Office of Daymen W.X. Robinson,
on brief), for appellant.

David M. Uberman, Assistant Attorney General (Jason S. Miyares,
Attorney General, on brief), for appellee.


Quintez Rephael Raven challenges the sufficiency of the evidence for his abduction

conviction. After appearing at his estranged wife's residence, in violation of a protective order,

Raven repeatedly assaulted her. When she escaped and tried to obtain help from a neighbor, he

dragged her back to the house and continued the assault. We affirm the trial court's judgment that

this action was not incidental to his other offenses of malicious wounding, strangulation, and

assaulting a person under a protective order. As such, there was sufficient evidence to find Raven

guilty of abduction. We also find no error with the sentencing.

---

* Pursuant to Code § 17.1-413, this opinion is not designated for publication.

BACKGROUND[1]

Raven forcibly entered the home of his estranged wife, Danielle Raven. He pointed a loaded handgun at her face and knocked a cell phone from her hands. He then advanced towards her as she retreated to a staircase, where he "strangled" her until she stopped screaming. Raven told Danielle he intended to kill her and then himself.

At one point, Raven looked out a window to see whether police were approaching. Danielle then tried to escape, running to her next-door neighbor's house. Raven "caught" Danielle as she screamed for help on the neighbor's doorstep and dragged her back toward her house. Raven knocked Danielle into some bushes, "straddle[d]" her on the ground, and struck the top of her head four times with the butt of his pistol. When a concerned citizen approached "to see what was going on," Raven reassured him that "everything was fine" before dragging Danielle back inside her house, where he struck her "six or seven more times with the gun."

Before fleeing the house, Raven called police to report that Danielle had "fallen outside and hit [her] head." Police arrived and transported her to the hospital, where she underwent treatment for lacerations to her face and scalp, bruising to her neck, and "vertigo."

The entire encounter within, and outside, the home lasted about an hour and was recorded on home surveillance cameras. Relevant footage was introduced at Raven's bench trial.

At the end of the Commonwealth's evidence, Raven moved to strike the abduction charge, arguing that Danielle's detention was merely incidental to the other charged offenses and thus insufficient to establish abduction. The trial court found that the surveillance video depicted Danielle "literally being dragged, kicking and screaming, into her own house." Accordingly, it denied the motion and convicted appellant of abduction, malicious wounding, strangulation,

---

[1] We state the facts "in the light most favorable to the Commonwealth, the prevailing party at trial." *Gerald v. Commonwealth*, 295 Va. 469, 472 (2018) (quoting *Scott v. Commonwealth*, 292 Va. 380, 381 (2016)).

burglary, assaulting a person under a protective order, violating a protective order with a deadly weapon, and three counts of using a firearm in the commission of a felony.

At sentencing, Danielle testified that she continued to experience mental and physical trauma from Raven's attack and would fear for her life if he were released from confinement. The trial court also accepted and considered Danielle's written victim impact statement expressing her concerns.

In mitigation, Raven presented testimony from several family members and friends. Matthew Long testified that he had served with appellant in the United States Navy in 2011, where he knew Raven to be kind, generous, and non-violent. Raven's mother, Laresha Raven, testified that he had suffered emotional and mental trauma after being "kidnapped" while serving in the Navy. Ordinarily "cheerful" and "happy," Raven developed paranoia and problems sleeping following the incident, which ultimately contributed to his marital "difficulties" with Danielle. Raven's brother, Gary Raven, and his sister, Kashara Simmons, testified that he had exhibited signs of mental illness before the offense. They also told the court they would provide him with lodging, financial support, and assistance procuring mental health counseling services upon his release from incarceration.

Raven, at allocution, expressed remorse for harming Danielle and said that he had since "learned a lot" and "had time to recover" while incarcerated. Raven explained that he had suffered emotional distress from his kidnapping in the Navy and had felt compelled to "bottle everything in" because "he wasn't allowed to talk to anyone about it" in the military. He had previously participated in outpatient mental health counseling but became suicidal after discovering what he believed to be evidence of Danielle's infidelity during their marriage. "Devastated" from the revelation, Raven subsequently attacked Danielle. Raven maintained, however, that he had intended only to harm himself during the attack, explaining that he had felt

- 3 -

"out of control" and paranoid. Since his incarceration for this offense, Raven had received diagnoses of "disassociate [sic] disorder" and "PTSD," and he was complying with psychiatric care.

Following argument by counsel, the trial court acknowledged that it had received and considered a presentence report, which contained discretionary sentencing guidelines recommending thirteen years of mandatory incarceration. The sentencing judge found that Raven was "a good sailor, a good son, good father, [and] community volunteer" but found that the surveillance video from the offense depicted "one of the most brutal assaults I have witnessed in 25 years." The court found that Danielle justifiably feared "that she was going to die that night" and stated that, "If I were your wife, I'd completely change my name to something you couldn't find, if possible." Accordingly, the court imposed a total sentence of thirty-three years of incarceration, suspending ten years, and ordering that Raven's firearm convictions run concurrent to each other, leaving an active sentence of fifteen years.

ANALYSIS

Raven challenges only the sufficiency of the evidence for his abduction conviction, and the trial court's failure, at sentencing, to consider alternatives to incarceration and Raven's mitigating evidence.

As for the abduction charge, Raven argues that Danielle's detention was incidental to his commission of the other charged offenses of malicious wounding, strangulation, and assault to a person under a protective order. "When reviewing the sufficiency of the evidence, '[t]he judgment of the trial court is presumed correct and will not be disturbed unless it is plainly wrong or without evidence to support it.'" *McGowan v. Commonwealth*, 72 Va. App. 513, 521 (2020) (alteration in original) (quoting *Smith v. Commonwealth*, 296 Va. 450, 460 (2018)). "In such cases, '[t]he Court does not ask itself whether *it* believes that the evidence at the trial established guilt beyond a

- 4 -

reasonable doubt.'" *Id.* (alteration in original) (quoting *Secret v. Commonwealth*, 296 Va. 204, 228 (2018)). "Rather, the relevant question is whether 'any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt.'" *Vasquez v. Commonwealth*, 291 Va. 232, 248 (2016) (quoting *Williams v. Commonwealth*, 278 Va. 190, 193 (2009)). "If there is evidentiary support for the conviction, 'the reviewing court is not permitted to substitute its own judgment, even if its opinion might differ from the conclusions reached by the finder of fact at the trial.'" *McGowan*, 72 Va. App. at 521 (quoting *Chavez v. Commonwealth*, 69 Va. App. 149, 161 (2018)).

Code § 18.2-47(A) sets out the offense of abduction.[2] Our Supreme Court has held that "one accused of abduction by detention and another crime involving restraint of the victim, both growing out of a continuing course of conduct," may be subjected "to separate penalties for separate offenses" upon conviction "only when the detention committed in the act of abduction is separate and apart from, and not merely incidental to, the restraint employed in the commission of the other crime." *Brown v. Commonwealth*, 230 Va. 310, 314 (1985). Stated simply, if abduction is "intrinsic" to the defendant's commission of another crime of restraint, the defendant cannot be convicted of both crimes. *See, e.g.*, *Chatman v. Commonwealth*, 61 Va. App. 618, 630 (2013) (conduct that occurred after malicious wounding was complete was separate from and not intrinsic to malicious wounding); *see also Scott v. Commonwealth*, 228

---

[2] Code § 18.2-47(A) states:

> Any person who, by force, intimidation or deception, and without legal justification or excuse, seizes, takes, transports, detains or secretes another person with the intent to deprive such other person of his personal liberty or to withhold or conceal him from any person, authority or institution lawfully entitled to his charge, shall be deemed guilty of "abduction."

Va. 519, 526 (1984) (recognizing that "in rape, robbery, and assault cases there is usually some [intrinsic] detention . . . of the victim").

The Supreme Court has held that to determine whether an abduction is "intrinsic" to a defendant's commission of another crime of restraint, the test is "whether any detention exceeded the minimum necessary to complete the required elements of the other offense." *Lawlor v. Commonwealth*, 285 Va. 187, 225 (2013). In making this determination, four factors are relevant:

> (1) the duration of the detention or asportation; (2) whether the detention or asportation occurred during the commission of a separate offense; (3) whether the detention or asportation which occurred is inherent in the separate offense; and (4) whether the asportation or detention created a significant danger to the victim independent of that posed by the separate offense.

*Smith v. Commonwealth*, 56 Va. App. 711, 721 (2010) (quoting *Hoyt v. Commonwealth*, 44 Va. App. 489, 494 (2004)). Applying these considerations, this Court has held that "asportation to decrease the possibility of detection" amplifies the risk of harm to the victim and is therefore not intrinsic to other crimes of restraint. *See, e.g.*, *Coram v. Commonwealth*, 3 Va. App. 623, 626 (1987) (holding that dragging victim to conceal her from view was not intrinsic to defendant's commission of rape); *Bell v. Commonwealth*, 22 Va. App. 93, 97 (1996) (holding that ordering victim to lie on the ground to avoid public detection was not intrinsic to robbery).

Here, the record established that after strangling Danielle, Raven prevented her escape by dragging her from her neighbor's doorstep to resume assaulting her within the privacy of her home, after reassuring a concerned passerby that "everything [was] fine." From those circumstances, a fact finder could rationally conclude that Raven forced Danielle back into the house to avoid detection while further assaulting her. Accordingly, the record amply supports the trial court's finding that Danielle's asportation was independent of the various other offenses and therefore constituted an abduction.

- 6 -

Appellant then argues that the trial court abused its sentencing discretion by sentencing him to fifteen years of active incarceration. Specifically, he says the court failed to consider "treatment options" as a reasonable alternative to incarceration. "We review the trial court's sentence for abuse of discretion." *Scott v. Commonwealth*, 58 Va. App. 35, 46 (2011).

> A trial court abuses its discretion "when a relevant factor that should have been given significant weight is not considered; when an irrelevant or improper factor is considered and given significant weight; [or] when all proper factors, and no improper ones, are considered, but the court, in weighing those factors, commits a clear error of judgment."

*Murry v. Commonwealth*, 288 Va. 117, 122 (2014) (quoting *Landrum v. Chippenham & Johnston-Willis Hosps., Inc.*, 282 Va. 346, 352 (2011)); *see also Porter v. Commonwealth*, 276 Va. 203, 260 (2008) ("The abuse-of-discretion standard includes review to determine that the discretion was not guided by erroneous legal conclusions." (internal quotation marks omitted)). Where there is no such procedural error, we will only review a trial court's substantive sentencing decision if it falls outside "the lawful boundaries of applicable sentencing statutes and constitutional limitations." *Du v. Commonwealth*, 292 Va. 555, 563 (2016).

Raven's argument that the trial court abused its discretion by disregarding treatment options as a sentencing alternative is meritless. Raven concedes that he faced a "mandatory minimum length of incarceration." And the only "treatment option" he presented for the court's consideration was testimony from his siblings that, *after* he was released from incarceration, they would provide him with lodging, financial help, and assistance finding mental health treatment. Therefore, we cannot say the court failed to consider "a relevant factor that should have been given significant weight." *Murry*, 288 Va. at 122. It was within the trial court's purview to weigh the mitigating evidence Raven presented. *Keselica v. Commonwealth*, 34 Va. App. 31, 36 (2000). "Criminal sentencing decisions are among the most difficult judgment calls trial judges face." *Du*, 292 Va. at 563. "Because this task is so difficult, it must rest heavily on judges

- 7 -

closest to the facts of the case—those hearing and seeing the witnesses, taking into account their verbal and *nonverbal* communication, and placing all of it in the context of the entire case." *Id.* (emphasis added). Here, the record shows that the trial court considered Raven's mitigating evidence, finding that he was "a good sailor, a good son, good father, [and] community volunteer." Balanced against that evidence, however, was the depravity of his attack, which the sentencing judge described as "one of the most brutal assaults I have witnessed in 25 years." After considering all the circumstances, the court imposed the sentence that it deemed appropriate. Finally, as the sentence "does not exceed [the statutory] maximum," our task is complete. *Du*, 292 Va. at 564.

## CONCLUSION

Accordingly, we affirm Raven's abduction conviction and active sentence.

*Affirmed.*