COURT OF APPEALS OF VIRGINIA

Present:   Judges Raphael, Lorish and Callins
Argued at Lexington, Virginia

UNPUBLISHED

DANIEL KEON WOODY

v.          Record No. 1282-22-3

COMMONWEALTH OF VIRGINIA

MEMORANDUM OPINION[*] BY
JUDGE LISA M. LORISH
AUGUST 22, 2023

FROM THE CIRCUIT COURT OF THE CITY OF LYNCHBURG
J. Frederick Watson, Judge

Rebecca Wetzel (Wetzel Legal, PLLC, on brief), for appellant.

Ken J. Baldassari, Assistant Attorney General (Jason S. Miyares,
Attorney General; Justin B. Hill, Assistant Attorney General, on
brief), for appellee.


The trial court convicted Daniel Keon Woody of unlawfully wounding his former girlfriend

and assaulting and battering her ten-year-old son.  Both of the victims testified at trial.  Woody,

relying heavily on his own differing testimony at trial, argues the court erred by rejecting his

self-defense arguments for both offenses.  Because weighing competing evidence is a task for the

trial court, we affirm the convictions.

BACKGROUND

On appeal, we recite the facts "in the 'light most favorable' to the Commonwealth, the

prevailing party in the trial court." *Hammer v. Commonwealth*, 74 Va. App. 225, 231 (2022)

(quoting *Commonwealth v. Cady*, 300 Va. 325, 329 (2021)).  Doing so requires us to "discard the

evidence of the accused in conflict with that of the Commonwealth, and regard as true all the

---

[*] This opinion is not designated for publication. *See* Code § 17.1-413(A).

credible evidence favorable to the Commonwealth and all fair inferences to be drawn therefrom." *Cady*, 300 Va. at 329 (quoting *Commonwealth v. Perkins*, 295 Va. 323, 323-24 (2018)).

After a cookout with family, Woody and his then-girlfriend, Atia Austin, argued at Woody's home. They both were drinking alcohol during the cookout. Woody asked Austin for her car keys so he could go to the store, but Austin could not find them. While Austin was searching, she asked Woody if he knew where they were located because he had used them earlier. Woody told Austin to get out and called her younger son "all types of faggots and bitches and stuff like that," so she began gathering her things to leave. As Austin left the room, Woody spit in her face. Austin's younger son was crying, and she went out the back door to continue looking for the keys.

Austin still could not locate her keys. She went back inside the house through the laundry room. As she tried to close the door, Woody pushed her to the ground and pinned her down. Austin attempted to push Woody off her so she could get up. Austin's younger son went upstairs crying and her older son, D.A., who was ten years old at the time, walked downstairs to investigate what was happening. After walking into the laundry room, D.A. wrapped his arms around Woody's chest to pull him off Austin. In response, Woody bit D.A.'s forearm, causing it to bleed. Austin grabbed Woody's hair, pulled his head off D.A.'s arm, and told her son to run upstairs. Austin testified that Woody then bit her thigh three times. After Austin freed herself from Woody, she found her keys, collected her belongings, and drove to her grandmother's house a few blocks away. Police arrived at the scene as the altercation ended and called emergency medical technicians, who treated D.A.'s arm.

Austin and D.A. went to the hospital and saw a nurse, who photographed and documented their injuries. The nurse documented ten "significant" injuries on Austin, including abrasions to her chest, arms, and elbows. The nurse also observed "red bruise[s] with scab formation" on her thighs. These injuries did not exist before the altercation with Woody.

Woody moved to strike the Commonwealth's evidence, arguing that it failed to prove he possessed the specific intent to maim, disfigure, disable, or kill. Alternatively, he argued that the evidence failed to prove malice. Woody maintained that even in a light most favorable to the Commonwealth, this was a two-way mutual-combat situation. The trial court denied Woody's motion.

Woody then testified in his defense and told a different story. He explained that he and Austin had a family cookout at his home and had both been drinking. Woody stated that the drinking "open[ed] up old wounds," and Austin started "stomping" and knocked down picture frames, so he told her to leave. Austin refused to leave without her keys despite being only two blocks from her grandmother's house and began "trashing" the house. Woody claimed that he called to his neighbor and told them to call the police.

Woody testified that Austin went to the backyard and began pulling up grass, then came back inside, throwing stools and a table, and "going crazy." Woody said Austin grabbed him and they fell in the laundry area. As they were both trying to get up, Austin grabbed his hair and used her weight to push his head as someone else had their forearm around his "throat." Woody thought he was being "jump[ed]," so he bit the forearm around his neck and "[e]verything stopped." Once Woody was released, he ran past everyone out of the house and saw the police arriving, so he shouted for help. Woody denied spitting on, biting, or fighting Austin but acknowledged biting D.A. Woody said that his hair was pulled out and that he had knots on his head from the incident.

In rebuttal, Lynchburg Police Officer Reid testified that when he arrived on the scene, Woody smelled like alcohol and appeared "very escalated," emotional, and disheveled. Woody told Officer Reid that he had been "jumped" by a ten year old and Austin. Woody admitted that he had bitten the child but claimed that he was just defending himself.

In his renewed motion to strike and closing argument, Woody contended that he was acting in self-defense and lacked the requisite intent to maim, disfigure, disable, or kill, or actual malice. He argued that his testimony was more consistent with the physical evidence, including the photographs of the injuries, than Austin's. He asked the trial court to credit his testimony and acquit him based on self-defense. After closing arguments, the trial court convicted Woody of assault and battery of Austin, and unlawful wounding of D.A. The trial court found that Woody had bitten D.A. but found that there was a reasonable doubt, based on the photographic evidence, whether he had also bitten Austin's thigh. Woody appeals.

ANALYSIS

Woody argues that the trial court erred by rejecting his self-defense claims on both offenses. He maintains that he had a right to use reasonable force to dispel the attacks on his person and escape the house. He relies exclusively on his own testimony at trial, which he asserts was credible and corroborated by the physical evidence. He emphasizes that the trial court rejected part of Austin's testimony by finding that there was a reasonable doubt regarding whether he had bitten her thigh. Woody also suggests that the trial court's failure to make explicit factual findings about the witnesses' demeanor shows that it arbitrarily rejected his testimony in favor of Austin's. These arguments fall short because of our standard of review and the deference we must give to a trial court as the fact finder.

"Determining the credibility of witnesses . . . is within the exclusive province of the [fact finder], which has the unique opportunity to observe the demeanor of the witnesses as they testify." *Dalton v. Commonwealth*, 64 Va. App. 512, 525 (2015) (first alteration in original) (quoting *Lea v. Commonwealth*, 16 Va. App. 300, 304 (1993)). "[T]he conclusions of the fact finder on issues of witness credibility may be disturbed on appeal only when we find that the witness' testimony was 'inherently incredible, or so contrary to human experience as to render it

- 4 -

unworthy of belief.'" *Ragsdale v. Commonwealth*, 38 Va. App. 421, 429 (2002) (quoting *Ashby v. Commonwealth*, 33 Va. App. 540, 548 (2000)). "Evidence is not 'incredible' unless it is 'so manifestly false that reasonable men ought not to believe it' or 'shown to be false by objects or things as to the existence and meaning of which reasonable men should not differ.'" *Gerald v. Commonwealth*, 295 Va. 469, 487 (2018) (quoting *Juniper v. Commonwealth*, 271 Va. 362, 415 (2006)). Moreover, "a fact finder's evaluations of credibility" often include "choosing between competing accounts offered by different witnesses." *Commonwealth v. McNeal*, 282 Va. 16, 22 (2011).

Here, Woody points to nothing that renders Austin and D.A.'s testimony inherently incredible, and we can find nothing either. Austin and D.A. consistently testified that Woody had Austin pinned to the ground in the laundry room. They also consistently testified that when D.A. attempted to remove Woody from Austin, Woody bit his forearm. In addition, their testimony describing Woody's aggressive attack was corroborated by the photographs that demonstrated the bite mark on D.A.'s arm and ten "significant" injuries on Austin's person. Indeed, Woody's admission that he bit D.A.'s arm provided even more corroboration of their testimony. *See Lambert v. Commonwealth*, 70 Va. App. 740, 760 (2019) (holding that, although corroboration is not necessary, a witness's testimony was not inherently incredible when it was corroborated by other evidence).

Although the trial court found that there was reasonable doubt regarding whether Woody had bit Austin's thigh, that finding does not render all of Austin's testimony inherently incredible. To the contrary, it is well-established that the fact finder "[i]s free to believe or disbelieve, in part or in whole, the testimony of any witness." *Bazemore v. Commonwealth*, 42 Va. App. 203, 213 (2004).

We also reject Woody's contentions that the trial court's failure to explicitly comment on the witness's demeanor or credibility proves that it arbitrarily credited Austin's testimony over his. A "trial court has no common law duty to explain in any detail the reasoning supporting its judgments. Absent a statutory requirement to do so, 'a trial court is not required to give findings of fact and conclusions of law.'" *Pilati v. Pilati*, 59 Va. App. 176, 180 (2011) (quoting *Fitzgerald v. Commonwealth*, 223 Va. 615, 627 (1982)). To be sure, "when no specific explanation is given by a trial court, we presume the court followed the governing legal principles . . . and *resolved all factual contests favorable to the prevailing party*." *Id.* at 181 (emphasis added) (internal citation omitted). We will not accept Woody's invitation to ignore these well-established principles and conclude based on the trial court's lack of an express finding that the trial court acted arbitrarily.

"When the law says that it is for triers of the facts to judge the credibility of a witness, the issue is not a matter of degree." *Smith v. Commonwealth*, 56 Va. App. 711, 718 (2010) (quoting *Swanson v. Commonwealth*, 8 Va. App. 376, 379 (1989)). Even if the fact finder had doubts regarding some parts of the witness's testimony, "[s]o long as a witness deposes as to facts [that], if true, are sufficient to maintain [the fact finder's] verdict," and "[i]f the trier of the facts sees fit to base the verdict upon that testimony[,] there can be no relief in the appellate court." *Id.* at 718-19 (quoting *Swanson*, 8 Va. App. at 379). Austin and her son testified to facts that were sufficient, along with the physical evidence, to sustain Woody's convictions. After the opportunity to see and hear all the witnesses and consider the evidence, the trial court accepted that testimony and rejected Woody's claims of self-defense. Thus, there can be no relief in this Court. The Commonwealth's evidence was competent, not inherently incredible, and sufficient to sustain Woody's convictions.

## CONCLUSION

For these reasons, the trial court's judgment is affirmed.

*Affirmed.*