COURT OF APPEALS OF VIRGINIA

UNPUBLISHED

Present: Judges Huff,* Ortiz and Raphael
Argued at Norfolk, Virginia


MALIK SAYVON WILLIAMS

              MEMORANDUM OPINION** BY
v.  Record No. 1786-23-1       JUDGE GLEN A. HUFF
                 FEBRUARY 25, 2025
COMMONWEALTH OF VIRGINIA


FROM THE CIRCUIT COURT OF THE CITY OF VIRGINIA BEACH
Stephen C. Mahan, Judge

Andrew M. Sacks (Sacks & Sacks, P.C., on brief), for appellant.

Brooke I. Hettig, Assistant Attorney General (Jason S. Miyares,
Attorney General, on brief), for appellee.


Following trial in the Circuit Court of the City of Virginia Beach (the "trial court"), a jury

convicted Malik Sayvon Williams ("appellant") for the following crimes committed against three

victims: aggravated sexual battery of T.M.; sexual penetration with an object of both T.M. and

K.D.; and assault and battery against K.L.[1] The trial court sentenced appellant to a total of 15 years

in prison and 12 months in jail. On appeal, appellant asserts that the trial court erred in joining the

charges for a single trial and in failing to replace a juror who expressed difficulty hearing a

recording played during the Commonwealth's opening statement. Appellant also challenges several

---

 * Judge Huff prepared and the Court adopted the opinion in this case prior to the effective
date of his retirement on December 31, 2024.

 ** This opinion is not designated for publication. *See* Code § 17.1-413(A).

 [1] The jury acquitted appellant of aggravated sexual battery and assault and battery against
a fourth victim, E.A.

evidentiary rulings by the trial court and maintains that the evidence was insufficient to support his convictions. Finding no error, this Court affirms the judgment below.

BACKGROUND[2]

I. Appellant's Touching of T.M.

In January 2022, T.M. scheduled a one-hour Swedish massage at Wine and Unwind Spa (the "Spa") in Virginia Beach. Appellant worked at the Spa as a licensed massage therapist and was assigned to treat T.M. T.M. received what she described as a "normal massage," and there was nothing discomforting about the experience.

T.M. returned to the Spa for a second massage on March 28, 2022. That time, she specifically requested that appellant perform the massage. In preparation, T.M. removed her clothes except for her underwear and covered herself with a sheet in the massage room. About 30 minutes into the massage, while T.M. was laying on her back, appellant rubbed T.M.'s breasts and "flickered" her nipples under the sheet draped over her. T.M. had not consented, or suggested permission, to appellant touching her breasts. T.M. was "shocked" and "frozen." Later, while massaging T.M.'s leg, appellant moved his hand under T.M.'s underwear and penetrated her vagina with his fingers. He moved his fingers in and out of T.M.'s vagina for a few minutes. When he started to sit down next to T.M., she jumped up. The massage ended then and appellant left the room.

After dressing, T.M. left the massage room and appellant gave her a glass of wine, which she took to the lounge area. Before leaving the Spa that day, T.M. tried, but was unable, to contact a

_____

[2] On appeal, we recite the facts "in the 'light most favorable' to the Commonwealth, the prevailing party in the trial court." *Hammer v. Commonwealth*, 74 Va. App. 225, 231 (2022) (quoting *Commonwealth v. Cady*, 300 Va. 325, 329 (2021)). Doing so requires us to "discard the evidence of the accused in conflict with that of the Commonwealth, and regard as true all the credible evidence favorable to the Commonwealth and all fair inferences to be drawn therefrom." *Cady*, 300 Va. at 329 (quoting *Commonwealth v. Perkins*, 295 Va. 323, 324 (2018)).

- 2 -

friend about appellant's conduct. Later that day, however, T.M. was able to speak to her friend over the phone, and she described how appellant had put his fingers inside her and that she did nothing about it.

Despite her initial reluctance, T.M. began trying to gather evidence to corroborate her report about appellant's actions during the massage on March 28, 2022. She hoped to engage appellant in a friendly conversation over the phone, which she planned to record, and have him admit what he had done to her. She left a message at the Spa asking appellant to call her, claiming she thought she had left a necklace in the massage room. T.M. then visited the Spa and left her business card with a friendly written message for appellant, but he did not respond. She also posted a favorable review of her massage on social media, but later removed it because it was not true and she did not want appellant to victimize someone else who had trusted her review. When her efforts to obtain a confession from appellant were unsuccessful, T.M. consulted an attorney within a few weeks after the massage incident. After the attorney advised her to speak to the police, T.M. reported the massage incident to Detective Jacqueline Savage.

II. Appellant's Touching of E.A.[3]

E.A. went to the Spa with her boyfriend on April 10, 2022, for a couples massage. Appellant was assigned to massage E.A. In preparation, E.A. undressed to her underwear and was covered with a sheet on the massage table. As appellant massaged E.A.'s back and shoulders, his hands repeatedly returned to the front part of her throat, even though she was face down on the table. E.A. felt very uncomfortable with this touching. Even after appellant moved on to focus on other parts of her body, he kept returning his hands to the front of E.A.'s throat. Appellant also rubbed his hand back and forth on the side of E.A.'s breast. E.A. did not protest at the time because

---

[3] This opinion describes E.A.'s testimony as it was introduced at appellant's trial despite the fact that the jury acquitted appellant for the crimes against E.A.

she did not want to ruin the experience for her boyfriend. She nevertheless felt "violated" by appellant's conduct and did not consent to the offensive touching.

E.A. and her boyfriend left the Spa immediately after the massage. When they got to the car, E.A. told her boyfriend that appellant had touched her breast and neck repeatedly and that the experience had been very uncomfortable for her.

III. Appellant's Touching of K.L.

On May 6, 2022, K.L. and her husband arrived at the Spa for a couples massage. K.L. did not request a full body massage, but instead asked that the massage therapist focus on her shoulders, back, and neck. In preparation, K.L. disrobed except for her underwear and was covered by a sheet draped over her on the massage table.

Appellant performed K.L.'s massage. After working on K.L.'s back, appellant pressed her head down toward the floor several times, causing her to believe that she would "drool on his feet." He then touched her breasts on both sides and reached under the sheet and under K.L.'s underwear to touch her buttocks. After having K.L. turn onto her back, appellant massaged the front of her shoulders and touched her breasts and nipples. Throughout this time, K.L. was in shock and did not know how to react. She did not consent to appellant pushing on her neck, rubbing the sides of her breasts and buttocks, and touching the front of her breasts.

After the massage ended, K.L. and her husband dressed and accepted a glass of wine and a beer. When they got into their car to drive home, K.L. said she thought she had just been sexually assaulted. She did not contact the police, however, because she just wanted to put the ordeal behind her.

IV. Appellant's Touching of K.D.

On May 28, 2022, K.D. went to the Spa for an hour-long deep tissue massage. Appellant was her assigned therapist for that massage. When appellant entered the room, K.D. was wearing

only underwear and a bra, but was covered by a sheet draped over the massage table. While massaging the front of K.D.'s legs, appellant slid his hand under her underwear and penetrated her vagina with his fingers. K.D. had not consented or suggested that she wanted appellant to penetrate her with his fingers. Feeling "[s]hocked, nervous, [and] anxious," K.D. sat up quickly and moved appellant's hand away. The massage immediately ended and appellant left the room.

After dressing, K.D. inquired about making an appointment for another massage because she was "[t]rying not to make anything bad." While waiting for her husband to pick her up, K.D. accepted the glass of wine that appellant offered her. At the front desk, K.D. left a tip and went home with her husband. K.D. told no one about what happened to her because she "didn't want to think about it."

V. Police Investigation

After T.M. went to the police in April 2022, Detective Savage and other officers contacted 100 of appellant's most recent clients from the Spa, including E.A. and K.D. When asked about her massage experience with appellant, K.D. reported the unwanted sexual conduct to the police; she then also told a friend and her husband about the incident. When contacted by the police, E.A. also described appellant's unwanted touching of her throat and her breast.

In a police interview on July 19, 2022, appellant admitted to touching his female massage clients sexually over the course of the past year. In appellant's own words, this touching included him massaging the women's breasts, nipples, and necks, as well as penetrating the women's vaginas with his fingers. Despite making these admissions, appellant insisted that the contact was entirely consensual, explaining that the consent was communicated to him in non-verbal cues, such as eye contact or suggestive body movement. The Commonwealth indicted appellant for several sexual assault charges against multiple victims.

VI. Motion to Sever Charges

Prior to trial, appellant objected to having all his charges tried together rather than separately for each victim.[4] He argued that the Commonwealth was essentially "having a trial to prove propensity to committing crime" with "seven complainants, [who] do not know each other, never met each other." Specifically, appellant argued "there's no need for a common scheme evidence or modus operandi to prove who did what" because the "[i]dentity of the person that gave the massages at that spa on that day is not being contested."[5]

The trial court received testimony from Detective Savage about her investigation into the charged offenses, including her conversations with the victims and her recorded interview with appellant in which "[h]e admitted to putting fingers inside their vaginas." The Commonwealth then argued that the probative value of trying the offenses together was not "substantially outweighed by the risk of unfair prejudice." It further suggested that the trial court could issue limiting instructions to the jury about "how they are to consider these other cases if you have to do that, and it's for a limited purpose, which we've brought up as a lack of accident, lack of mistake, as well as financial motive."

After considering the evidence presented and the parties' arguments, the trial court denied appellant's motion to sever, finding that "the offenses meet the requirements of Rule 3A:6(b)" and

---

[4] Out the outset, appellant asserted that "it would be the Commonwealth's burden to say that that joinder is appropriate as opposed to the defense proving that severance is appropriate." The Commonwealth responded by saying it was "not sure the rule places the burden on either of [the parties]."

[5] The Commonwealth acknowledged that "common scheme is a way of establishing identity."

that "justice does not require separate trials" pursuant to "Rule 3(a)10(c)."[6] Regarding the latter finding, the trial court directed the parties "to agree upon appropriate instructions to [give] the jury . . . to orient the jury that this type of evidence is going to be submitted, and that it is limited in nature in terms of how it can be used." Ultimately, the trial court read the following limiting instruction to the jury:

> Evidence that the defendant committed one of the charged offenses is not to be considered by you as evidence that the defendant had a tendency or propensity to commit one of the other offenses for which he is on trial. However, in evaluating one charge, you may consider the evidence admitted on the other charges as evidence on the issues of the defendant's motive, his lack of mistake, lack of accident, opportunity, intent or whether the acts were part of a common scheme, and for no other purpose.

VII. Trial Proceedings

During opening statements at trial, the Commonwealth played a portion of the video recording of appellant's interview with the police. The trial court then adjourned the proceedings for the following day. On the second day of trial, before any evidence was presented, a juror sent the trial court a message that she had difficulty understanding the words in the video clip that the Commonwealth had played the prior day.

The trial court commented that the quality of the audio in the recording was poor. The Commonwealth stated that it intended to play the entire video at trial and could increase the volume. The Commonwealth further stated that it would explore the option of obtaining speakers to enhance the audio system. Throughout this dialogue, appellant raised no objections

---

[6] The trial court did not make a ruling "concerning the admissibility of this evidence pursuant to Rule 404(b)."

Upon a subsequent pre-trial motion, the Commonwealth nolle prossed charges for aggravated sexual battery, battery, and assault and battery involving three other victims: S.S., A.F., and J.C. Appellant renewed his motion to sever the remaining charges involving T.M., K.L., K.D., and E.A. The trial court denied the motion "[f]or the reasons previously stated," finding that the reduction in the number of complainants did not "affect[] the outcome of the court's prior analysis on this issue."

- 7 -

or motions concerning the ability of any juror to proceed. Notably, when the Commonwealth later presented the full video recording during trial, no juror indicated any difficulty in hearing it and appellant did not raise such issue either.

During its case-in-chief, the Commonwealth also presented testimony from Detective Savage regarding her investigation into the allegations against appellant. Defense counsel cross-examined Detective Savage on several different points, including her conversations with E.A., in which E.A. described appellant massaging her neck "in a sexual way." When defense counsel asked Detective Savage to recount statements that K.D. had made to her, the Commonwealth objected on hearsay grounds and the trial court sustained the objection. Moving on, defense counsel asked Detective Savage about her interviews with appellant. Detective Savage testified that appellant said his touching of the victims "was consensual."

The Commonwealth also introduced testimony from Dawn Hogue as an expert witness in the field of massage therapy. Hogue stated that a massage therapist inserting fingers into a client's vagina during a massage was not within the standard of practice in the industry. Nor was massaging breast tissue generally recognized as a component of a proper massage.

Following the Commonwealth's evidence, appellant moved to strike all the charges on the ground that the Commonwealth had failed to disprove the victims' consent to the touching. For the assault and battery charges, appellant argued that K.L. and E.A. "consented to obviously being touched by the [appellant] in that they paid, went into the lobby, received the service, [and] . . . did not give any indications in any way that it was painful, harmful to them at any point during the massage[.]" Regarding the remaining sexual charges, appellant claimed his statements to Detective Savage, which were played as part of his recorded police interview, proved that "any contact he would have had with those individuals . . . would have been consensual in nature." Viewing the evidence in the light most favorable to the

Commonwealth—"the standard that is applicable at this stage of the proceedings"—the trial court denied appellant's motion.[7]

Next, in anticipation of appellant's case-in-chief, the Commonwealth moved to preclude any testimony from Dr. Jeffrey Gibbons on the basis that appellant had not timely disclosed his expected expert testimony and notes, as required by the trial court's discovery order. Defense counsel countered that "[s]ome of it was disclosed. There was a witness list where we described what the doctor would be testifying to that was timely filed." The trial court had entered a discovery order on September 12, 2022, requiring appellant to disclose "no later than 14 days before trial, in accord with Rule 3A:11(D)(4)(A)[,] . . . any written report of or if no such report exists, a written summary of expert opinion testimony the defendant intends to use at trial." Such summary must "describe the witnesses['] opinions, the basis and reasons therefore and the witnesses['] qualifications and contact information."

The trial court summarized the relevant provisions of the discovery order, including the "range of remedies for failure to comply with the rule and order." It then asked the Commonwealth to identify what information it believed was not provided "in accord with the prior discovery order and what aspects of that, if any, have prejudiced . . . the testimony of this witness?" The Commonwealth pointed to "the testimony proffer . . . obtained on June 9th"—consisting of several emails between defense counsel and Dr. Gibbons—and a YouTube video that defense counsel had given to Dr. Gibbons "to craft his testimony around." The Commonwealth further argued that

---

[7] In doing so, the trial court noted that it must

> give the Commonwealth the benefit of every reasonable inference that naturally and logically flows from the evidence.
>
> In that regard, the court is not weighing and evaluating competing evidence but, in fact, is excluding . . . any evidence that would be disfavorable from the Commonwealth's perspective or favorable from the defendant's perspective.

appellant's prior "expert disclosure . . . did not comply with the rule" because it was short, vague, and provided "none of the underlying data." In contrast, the untimely "report is far more extensive than the five lines [the Commonwealth] was previously provided and gets into far more things, citing, studies relied upon."[8]

Citing to its "consideration of the document that has been filed this afternoon, the e-mail chain previously referenced related to the expert witness . . . the information therein[,] the representations of counsel[,] and prior submissions," the trial court found that appellant had not complied with the terms of the discovery order and rule "and that the Commonwealth has been prejudiced as a result thereof." Accordingly, the court "grant[ed] the Commonwealth's motion to exclude Dr. Gibbons." At appellant's express request, the trial court further "grant[ed] the Commonwealth's earlier motion to exclude Dr. Gibbons based on the position that -- any testimony he may have offered was otherwise within the common knowledge of [the jury]." The trial court clarified that its additional ruling was made "as an alternative ground[] for excluding Dr. Gibbons at the express request of the defendant."

Upon stipulation by the parties, the trial court then admitted into evidence a document "contain[ing] the notes taken by Detective Savage who we heard from yesterday related to her telephone interview with [K.L.]; and so the notes of that interview are admitted as Defendant's Exhibit 1 without any objection." Appellant introduced no further evidence before renewing his motion to strike the charges for insufficient evidence. Regarding the assault and battery charges, appellant argued that the victims "consented to touch" and did not testify to any resulting harm, such as choking or gagging, that "may be harmful or offensive or in some way unwarranted by the person for which you are conducting the massage on." As to the remaining charges involving

---

[8] The Commonwealth then told the trial court that it would not "drop everything . . . in the middle of a jury trial to now try to study up on this expert and what he reviewed."

sexual offenses, appellant merely asserted that "it was consensual in nature." The Commonwealth responded that "[t]he consent issue is squarely for the jury."

In discussing this sufficiency challenge, the trial court noted that appellant's arguments were improperly focused on "whether a factfinder, that is, the jury in this case, *should* reach a particular conclusion based upon th[e] evidence as opposed to whether it would be *permissible* for them to reach such a conclusion." (Emphases added). For example, regarding the assault and battery charges, the trial court determined that, "although not required to reach this conclusion, it would be reasonable for a person to conclude from the testimony we heard that that particular touching was unexpected, unwanted, undesired." The trial court, therefore, denied appellant's renewed motion and "conclude[d] that on the evidence before it a rational factfinder could reach conclusions that are consistent with the elements of the offense[s]."

VIII. Sentencing

After its deliberations, the jury found appellant guilty of (i) one count of aggravated sexual battery against T.M.; (ii) one count each for T.M. and K.D. of sexual penetration with an object; and (iii) one count of assault and battery against K.L. For those convictions, the trial court sentenced appellant to a total of 15 years in prison and 12 months in jail. This appeal followed.

ANALYSIS

On appeal, appellant asserts that the Commonwealth's evidence was insufficient to prove his guilt beyond a reasonable doubt. He further alleges that the trial court erred in joining his multiple crimes for a single trial and in refusing to dismiss a juror who exhibited a hearing disability. Lastly, appellant contends that the trial court erred in limiting his cross-examination of Detective Savage and excluding expert testimony offered by the defense. As discussed below, appellant's arguments are unavailing.

I. Sufficiency of the Evidence

In challenging the sufficiency of the evidence to sustain his convictions, appellant relies solely on his assertion that his touching of the victims was consensual and therefore not criminal in nature.

"When reviewing the sufficiency of the evidence, '[t]he judgment of the trial court is presumed correct and will not be disturbed unless it is plainly wrong or without evidence to support it.'" *McGowan v. Commonwealth*, 72 Va. App. 513, 521 (2020) (alteration in original) (quoting *Smith v. Commonwealth*, 296 Va. 450, 460 (2018)). "In such cases, '[t]he Court does not ask itself whether *it* believes that the evidence at the trial established guilt beyond a reasonable doubt.'" *Id.* (alteration in original) (quoting *Secret v. Commonwealth*, 296 Va. 204, 228 (2018)). "Rather, the relevant question is whether '*any* rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt.'" *Vasquez v. Commonwealth*, 291 Va. 232, 248 (2016) (quoting *Williams v. Commonwealth*, 278 Va. 190, 193 (2009)). "If there is evidentiary support for the conviction, 'the reviewing court is not permitted to substitute its own judgment, even if its opinion might differ from the conclusions reached by the finder of fact at the trial.'" *McGowan*, 72 Va. App. at 521 (quoting *Chavez v. Commonwealth*, 69 Va. App. 149, 161 (2018)).

Appellant's convictions for aggravated sexual battery and sexual penetration with an object required proof that the touching was against the will of the victims. *See* Code §§ 18.2-67.2(A)(2), -67.3(A)(5). Similarly, appellant's conviction for assault and battery required proof of an offensive touching. *See* Code § 18.2-57; *see also Parish v. Commonwealth*, 56 Va. App. 324, 330 (2010) ("To sustain a conviction for battery, the Commonwealth must prove a 'wil[l]ful or unlawful touching' of another." (alteration in original) (quoting *Wood v. Commonwealth*, 149 Va. 401, 404 (1927))). Appellant does not contest that he touched T.M.,

K.L., and K.D. in the manner they described at trial. Rather, he argues only that all three victims consented to the sexual touching.

By convicting appellant of the crimes against T.M., K.L., and K.D., the jury necessarily credited those witnesses' testimony and rejected appellant's defense of consent. Appellant alleges that it was error for the issue of consent to reach the jury in the first place because the evidence established his "defense of consent" as a matter of law. Specifically, he asserts that his consent defense was corroborated by the Commonwealth's evidence because (i) he made the same statement in his interview with Detective Savage, and (ii) the victims' self-described "post-massage behavior [was] utterly inconsistent with force and wholly consistent with consent." He argues, therefore, that the trial court erred in denying his motions to strike on those grounds.

That claim, however, is premised on a finding that the testimony of each victim was "inherently incredible"; otherwise, the trial court cannot usurp the jury's factfinding role in making credibility determinations. *See Fletcher v. Commonwealth*, 72 Va. App. 493, 502 (2020) ("[T]he credibility of a witness, the weight accorded the testimony, and the inferences to be drawn from proven facts are matters solely for the fact finder's determination." (quoting *Crawley v. Commonwealth*, 29 Va. App. 372, 375 (1999))). "To be 'incredible,' testimony 'must be either so manifestly false that reasonable men ought not to believe it, or it must be shown to be false by objects or things as to the existence and meaning of which reasonable men should not differ.'" *Lambert v. Commonwealth*, 70 Va. App. 740, 759 (2019) (quoting *Juniper v. Commonwealth*, 271 Va. 362, 415 (2006)).[9]

___

[9] This Court notes for the record, however, that appellant did not use the term "inherent incredibility" or its related language in either his motions to strike or his appellate brief. Nor did he make a motion to set aside the jury's verdict on such grounds. Arguing that the jury incorrectly assessed the credibility of the statements presented during trial is not the same as arguing that each victim's testimony was inherently incredible as a matter of law. For these reasons, appellant's argument *may* raise preservation concerns on any further appeal. *See Commonwealth v. Bass*, 292 Va. 19, 33 (2016) (finding that appellant did not preserve his argument for appeal where

But "[a] legal determination that a witness is inherently incredible is very different from the mere identification of inconsistencies in a witness' testimony or statements. Testimony may be contradictory or contain inconsistencies without rising to the level of being inherently incredible as a matter of law." *Kelley v. Commonwealth*, 69 Va. App. 617, 626 (2019); *see also Smith v. Commonwealth*, 56 Va. App. 711, 719 (2010) (recognizing that it is the factfinder's responsibility to "resolve conflicting accounts within a witness' testimony"). Similarly, "[t]he mere fact that a witness may have delayed in reporting knowledge of a case . . . does not necessarily render the testimony unworthy of belief." *Juniper*, 271 Va. at 415. Such considerations are instead "appropriately weighed as part of the entire issue of witness credibility, which is left to the jury to determine." *Id.*[10]

Here, T.M. explained that her first massage with appellant was entirely normal, but that she froze in shock when he put his fingers into her vagina during the second massage. While still trying to comprehend the violation of her body and decide what to do next, T.M. went through the motions of normalcy immediately after the massage. She even reached out to a

---

he neither "raise[d] the question of whether the Commonwealth's eyewitness testimony was inherently incredible as a matter of law" nor argued that "the jury should not be permitted to weigh the witnesses' credibility"); *Ray v. Commonwealth*, 74 Va. App. 291, 306-07 (2022) (holding that appellant failed to preserve a sufficiency challenge under Rule 5A:18 where he did not argue inherent incredibility in his motions to strike or set aside the jury's verdict below); *Hicks v. Commonwealth*, 71 Va. App. 255, 266 (2019) ("[M]aking one specific argument on an issue does not preserve a separate legal point on the same issue for [appellate] review." (second alteration in original) (quoting *Johnson v. Commonwealth*, 58 Va. App. 625, 637 (2011))).

[10] *Compare Wilson v. Commonwealth*, 46 Va. App. 73, 88 (2005) (recognizing that "failure to report an incident of sexual abuse for an *unreasonably* long period [generally] casts 'suspicion and doubt' on the victim's testimony, 'unless there is a credible explanation for such delay[,]'" such as where the victim "explained that she did not immediately report [appellant]'s conduct because of her fear of him and her shame and embarrassment at what was happening to her" (emphasis added) (quoting *Willis & Bell v. Commonwealth*, 218 Va. 560, 563 (1977))), *with Smith*, 56 Va. App. at 719 (recognizing that factors such as a "'victim's youth, fright and embarrassment [may] provide[] the jury with an acceptable explanation' for a victim's otherwise unexplainable statements or actions" (alterations in original) (quoting *Corvin v. Commonwealth*, 13 Va. App. 296, 299 (1991))).

friend to help her process the situation, but that friend did not call back until T.M. had already returned home.

There, in the safety of her own home, T.M. told her friend what happened and finally formulated a plan of action. Based on prior experiences, T.M. was hesitant to contact the police without first attempting to gather any additional evidence against appellant. She tried to lure him into a confession by posting a false positive review of his services online and by leaving messages for him with the Spa asking that he contact her. When appellant did not respond, T.M. consulted with an attorney and made an official report with the police.

By contacting appellant's other recent massage clients, police discovered that several of those clients, including K.D. and K.L., had also experienced sexual touching during their massage appointments with appellant. When questioned by the police, K.D. and K.L. each explained that they were so shocked by appellant's actions during their massages that they were unable to react immediately and process what to do next. Unlike T.M., however, K.D. and K.L. had tried to put the unpleasant experiences behind them until the police contacted them. At that point, they chose to cooperate with the police investigation and then testify at trial. Under these facts, neither T.M.'s delayed reporting nor the initial decision by K.D. and K.L. to not contact the police, establishes inherent incredibility. *See, e.g.*, *Corvin v. Commonwealth*, 13 Va. App. 296, 299 (1991) (holding that a "victim's failure to immediately report the incident did not render his testimony inherently incredible as a matter of law").

Because the record is devoid of circumstances that would render the testimony of T.M., K.L., or K.D. inherently incredible, this Court finds that the trial court did not err in denying appellant's motions to strike and sending the case to the jury for resolution. In the absence of inherent incredibility, this Court affords great deference to the jury's credibility determinations "because the fact finder 'has the unique opportunity to observe the demeanor of the witnesses as

- 15 -

they testify.'" *Washington v. Commonwealth*, 75 Va. App. 606, 616 (2022) (quoting *Dalton v. Commonwealth*, 64 Va. App. 512, 525 (2015)); *see also Canada v. Commonwealth*, 75 Va. App. 367, 386 (2022) ("[T]his Court must accept 'the trial court's determination of the credibility of witness testimony unless, "as a matter of law, the testimony is inherently incredible."'" (quoting *Nobrega v. Commonwealth*, 271 Va. 508, 518 (2006))). Accordingly, "'[t]here can be no relief' in this Court if a witness testifies to facts 'which, if true, are sufficient' to support the conviction" and the factfinder "bases its decision 'upon that testimony.'" *Kelley*, 69 Va. App. at 626 (quoting *Smith*, 56 Va. App. at 718-19); *see also Maust v. Commonwealth*, 77 Va. App. 687, 703 (2023) (en banc) (holding that "credibility issues" resolved "in favor of the Commonwealth, . . . will not be disturbed on appeal unless plainly wrong" (quoting *Towler v. Commonwealth*, 59 Va. App. 284, 291 (2011))).

As pertinent here, "a conviction for rape and other sexual offenses may be sustained solely upon the uncorroborated testimony of the victim." *Wilson v. Commonwealth*, 46 Va. App. 73, 87 (2005). The factfinder "determines which reasonable inferences should be drawn from the evidence[] and whether to reject as unreasonable the hypotheses of innocence advanced by a defendant." *Maust*, 77 Va. App. at 706. The testifying victims in this case affirmatively stated that they did not give appellant consent—either express or implied, verbal or physical—to touch their breasts, nipples, buttocks, or vagina during their massages. Expert witness Hogue then testified that touching those intimate areas of a client's body was not within the industry standard for proper massages. Considering that evidence in combination with appellant's admissions to the sexual touching, a reasonable juror could have concluded that appellant's consent defense

was nothing more than a self-serving attempt to avoid the consequences of his unauthorized actions.[11]

Accordingly, the jury had sufficient evidence to find appellant guilty of committing the charged offenses against T.M., K.D., and K.L. *See Holloway v. Commonwealth*, 57 Va. App. 658, 666 (2011) (en banc) ("Whether an alternate hypothesis of innocence is reasonable is a question of fact and, therefore, is binding on appeal unless plainly wrong." (quoting *Archer v. Commonwealth*, 26 Va. App. 1, 12-13 (1997))). By accepting the jury's determination to credit the victims' testimony and to reject appellant's hypothesis of innocence, this Court affirms appellant's convictions. *See, e.g.*, *Willis & Bell v. Commonwealth*, 218 Va. 560, 563 (1977) (noting that convictions for crimes of a sexual nature may depend upon the "uncorroborated testimony of a prosecutrix if her evidence is credible, and the guilt of the accused is believed by the [factfinder] beyond a reasonable doubt").

II. Joinder of the Offenses

Appellant argues that the trial court erred in denying his motion to sever the charges against the multiple victims for separate trials. "Rule 3A:10(c) governs when courts may direct an accused to be tried at one time for all charges currently against him." *Brooks v. Commonwealth*, 73 Va. App. 133, 141 (2021). "The question whether an accused, pursuant to Rule 3A:10(c), can be tried in a single trial for all offenses then pending against that defendant is a matter resting within a trial court's sound discretion." *Id.* (quoting *Commonwealth v. Minor*, 267 Va. 166, 172 (2004)). Thus, unless the trial court "abused its discretion in ordering a single

---

[11] *See, e.g.*, *Bazemore v. Commonwealth*, 42 Va. App. 203, 213 (2004) (en banc) (holding that the factfinder is "free to believe or disbelieve, in part or in whole, the testimony of any witness"); *Maust*, 77 Va. App. at 703 (holding that "the fact finder is entitled to disbelieve the self-serving testimony of the accused and to conclude that the accused is lying to conceal his guilt" (quoting *Speller v. Commonwealth*, 69 Va. App. 378, 388 (2018))).

trial for the multiple charges," this Court will not disturb the trial court's decision on appeal. *Id.* at 141-42.[12]

As provided by Rule 3A:10(c), the trial court "may direct that an accused be tried at one time for all offenses then pending against him, if justice does not require separate trials and (i) the offenses meet the requirements of Rule 3A:6(b) or (ii) the accused and the Commonwealth's attorney consent thereto." Because appellant did not consent to be tried jointly for his offenses, "the Commonwealth was required to establish both of the other two conditions of Rule 3A:10(c), namely, that the offenses satisfied the requirements of Rule 3A:6(b), and that justice did not require separate trials." *Brooks*, 73 Va. App. at 142 (quoting *Scott v. Commonwealth*, 274 Va. 636, 644 (2007)). In denying appellant's motion to sever, the trial court found that justice did not require separate trials. It also found that the offenses met the requirements of Rule 3A:6(b) so that joinder of the offenses for a single trial was appropriate.

Under Rule 3A:6(b), "[t]wo or more offenses . . . may be charged in separate counts of a[] [single] indictment or information if the offenses . . . constitute parts of a common scheme or plan." Although "not synonymous" with one another, the terms "common scheme" and "common plan" "are not mutually exclusive and a series of crimes may exhibit both a 'common scheme' and a 'common plan.'" *Scott*, 274 Va. at 646; *see also Brooks*, 73 Va. App. at 142 ("[A]lthough a common scheme and a common plan are distinctively different, it is possible for the same set of facts to meet both definitions."). For example, the Supreme Court held in *Satcher v. Commonwealth*, 244 Va. 220, 229 (1991), that similar crimes committed against two

---

[12] "A motion to sever charges is decided on the evidence 'as it appears before trial,' not on the evidence that ultimately was adduced at trial." *Brooks*, 73 Va. App. at 143 (quoting *Spence v. Commonwealth*, 12 Va. App. 1040, 1045 (1991)).

women in the same location along a bike path within 30 minutes of one another "constitute parts of a common scheme or plan" to commit rape and robbery.[13]

The term "'[c]ommon scheme' describes crimes that share features idiosyncratic in character, which permit an inference that each individual offense was committed by the same person or persons as part of a pattern of criminal activity involving certain identified crimes." *Brooks*, 73 Va. App. at 142-43 (quoting *Scott*, 274 Va. at 645). "The possible range of idiosyncratic features that may prove a 'common scheme' is very broad," but the Commonwealth's evidence of such features "must permit an inference of a pattern of criminal activity by the same person; mere general similarities common to all offenses of the same type are insufficient." *Id.* at 143. Evidence sufficient to establish a "common scheme" is almost exclusively used as proof of the perpetrator's identity. *See, e.g.*, *Johnson v. Commonwealth*, 259 Va. 654, 676-78 (2000); *Turner v. Commonwealth*, 259 Va. 645, 651-53 (2000); *Spencer v. Commonwealth*, 240 Va. 78, 87-91 (1990).

In contrast, "[a] common plan is established 'when the constituent offenses occur sequentially or interdependently to advance some common, extrinsic objective.'" *Brooks*, 73 Va. App. at 144 (quoting *Severance v. Commonwealth*, 67 Va. App. 629, 646 (2017)). In other words, "the term 'common plan' describes crimes that are related to one another for the purpose of accomplishing a particular goal." *Scott*, 274 Va. at 646. What matters is not the end result but rather the commonality of the defendant's plan or intent, which he seeks to fulfill through

_____

[13] In *Satcher*, the Court explained that the acts constituting a common scheme or plan "were closely connected in time, place, and means of commission, all of which support[ed] the use of a single trial." 244 Va. at 229. Listing off the pertinent facts—that the "crimes occurred within a few yards and about one-half hour of each other"; that "[b]oth victims were forcibly removed from the bicycle path at a location concealed behind the 'sound barrier wall'"; and that each victim "was brutally beaten and partially disrobed"—the Court determined that the defendant's "criminal intent . . . to commit rape and robbery" was the same for both attacks. *Id.* Accordingly, it held that "the requirements for a single trial under Rule 3A:6(b) are satisfied in this case." *Id.*

- 19 -

targeted acts. *See, e.g.*, *Collins v. Commonwealth*, 226 Va. 223, 228-32 (1983) (finding no error where trial court admitted testimony of defendant's former prostitute employees because such testimony showed defendant's intent to hire employees for purpose of operating an illegal prostitution business); *Powell v. Commonwealth*, 267 Va. 107, 118 (2004) (finding no error where trial court admitted evidence of subsequent rape and attempted murder to prove identity and motive of defendant in writing letter to both victims where he acknowledged his intent to rape and kill them); *Satcher*, 244 Va. at 229-30 (finding "[t]he criminal intent of the assailant -- to commit rape and robbery -- was the same in both situations" where the attacks on two different women "were closely connected in time, place, and means of commission," thereby satisfying "the requirements for a single trial under Rule 3A:6(b)" because "the two or more acts involved in this case constituted parts of a common scheme or plan").

Considering the facts and circumstances here, the trial court did not abuse its discretion in determining that the crimes met the requirements of commonality under Rule 3A:6. Specifically, appellant was indicted for sexually motivated crimes committed against seven female victims at the Spa, where he worked as a massage therapist. The charged offenses occurred in a short timeframe between February 2022 and May 2022, and involved sexual touching during massage appointments when the victims were unclothed and vulnerable. Appellant even admitted that he engaged in the conduct but claimed that the women consented to the touching.

"Justice often requires separate trials where highly prejudicial evidence of one of the crimes is not admissible in the trial of the other." *Brooks*, 73 Va. App. at 145 (quoting *Long v. Commonwealth*, 20 Va. App. 223, 226 (1995)); *see also Godwin v. Commonwealth*, 6 Va. App. 118, 123 (1988) ("The efficiency promoted by joinder of offenses does not outweigh the harm caused by the introduction of inadmissible evidence of another crime."). But "the mere fact that a jury may consider evidence of a defendant's guilt for multiple offenses does not automatically

constitute unfair prejudice, otherwise no joinder of offenses would ever be permissible." *Brooks*, 73 Va. App. at 146. "[I]n striking the balance between judicial economy and unfair prejudice, a circuit court must essentially determine the issues a defendant is contesting and conduct a relevance analysis of the evidence proffered by the Commonwealth in support of joinder of the offenses." *Id.*; *see Cousett v. Commonwealth*, 71 Va. App. 49, 60 (2019) ("The purpose of Rule 3A:10(c) is to strike a balance between judicial economy and the danger of unfair prejudice.").

The trial court here did not err in determining that justice did not require severing the charges. "[E]vidence of other crimes generally is not admissible for the purpose of showing the commission of the particular crime charged." *Godwin*, 6 Va. App. at 123; *see also* Va. R. Evid. 2:404(b). If, however, "the legitimate probative value of such proof outweighs its incidental prejudice, such evidence is admissible if it tends to prove any relevant fact pertaining to the offense charged[.]" Va. R. Evid. 2:404(b); *see Satcher*, 244 Va. at 230 (holding that evidence of other crimes is admissible "if it tends to prove any relevant element of the offense charged" (quoting *Kirkpatrick v. Commonwealth*, 211 Va. 269, 272 (1970))).

It is well-established that evidence of other crimes may be admitted in cases "where it is relevant to show motive, opportunity, intent, preparation, plan, knowledge, identity, absence of mistake, accident, or if they are part of a common scheme or plan." Va. R. Evid. 2:404(b); *see also Satcher*, 244 Va. at 230 ("[E]vidence of similar acts is admissible to show a common scheme, design, or plan where there is 'such a concurrence of common features that the various acts are naturally to be explained as caused by a general plan of which they are the individual manifestations.'" (alteration in original) (quoting *McWhorter v. Commonwealth*, 191 Va. 857, 870-71 (1951))). The record here supports a finding that appellant used his unique position of trust and access as a massage therapist to intentionally assault his vulnerable massage clients in the privacy of the Spa's massage rooms.

The specific nature of the assaults varied only slightly from victim to victim, but the attendant circumstances were nearly identical. And despite admitting touching the victims, appellant maintained that he only did so with their consent. Therefore, appellant's repeated sexual conduct toward multiple women, over the course of only four months, tends to disprove his asserted defense that each of those women—some of whom were even accompanied by their romantic partners—gave appellant non-verbal consent to touch them sexually or outside the bounds of a standard massage. To the extent appellant attempted to excuse some of his behavior as an accident or mistake, the evidence of other similar and intentional incidents rebuts that defense. Accordingly, such evidence of appellant's conduct toward all four victims was "relevant to a contested issue in the case and otherwise admissible[;]" "while certainly prejudicial, [it wa]s not *unfairly* so." *Brooks*, 73 Va. App. at 146.[14]

Furthermore, "any risk of improper application of the evidence by the jury can ordinarily be prevented by a proper instruction." *Id.* Here, the trial court instructed the jury on how to properly consider the evidence of crimes against multiple victims. Specifically, the trial court ordered the jury to not consider evidence of one charge "as evidence that the defendant had a tendency or propensity to commit one of the other offenses for which he is on trial."

The jury was further instructed that, "in evaluating one charge," it "may consider the evidence admitted on the other charges [only] as evidence on the issues of the defendant's motive, his lack of mistake, lack of accident, opportunity, intent, or whether the acts were a part of a common scheme, and for no other purpose." Unless the record proves otherwise, "[j]uries are presumed to follow prompt cautionary instructions regarding the limitations placed upon

---

[14] "In contrast, if the evidence proffered by the Commonwealth relates to 'a fact not probative of an element of the offense being tried,' and . . . is only suggestive of the defendant's criminal propensity, such evidence is unfairly prejudicial because it would 'adversely affect his presumption of innocence.'" *Brooks*, 73 Va. App. at 146 (quoting *Long*, 20 Va. App. at 227).

evidence." *Burley v. Commonwealth*, 29 Va. App. 140, 147 (1999) (citing *LeVasseur v. Commonwealth*, 225 Va. 564, 589 (1983)). The record contains no evidence the jury did not follow the trial court's limiting instruction.

Upon this record, and in light of the trial court's limiting instruction, this Court finds that the joinder decision did not cause unfair prejudice to appellant. As justice did not require separate trials, the trial court did not abuse its discretion in denying appellant's motion for severance.

### III. Disability of a Juror

Appellant contends that the trial court erred in "failing to replace a hearing-impaired juror with an alternate" after the juror communicated to the trial court that she had struggled to understand some of the words spoken on the video clip the Commonwealth played during its opening statement. The juror made that statement on the second day of trial, after the parties' opening statements but before any witnesses testified. In response, the trial court noted the poor quality of the audio recording, and the Commonwealth declared it would try to enhance the audio system with speakers. Throughout this discussion below, appellant voiced no objections or motions for removal regarding the complaining juror.

"No ruling of the trial court . . . will be considered as a basis for reversal unless an objection was stated with reasonable certainty at the time of the ruling, except for good cause shown or to enable this Court to attain the ends of justice." Rule 5A:18. Appellant acknowledges on appeal that he did not preserve a challenge to the juror, but nevertheless asks this Court to invoke the ends of justice exception to Rule 5A:18 and consider the issue. "'The ends of justice exception is narrow and is to be used sparingly,' and applies only in the extraordinary situation where a miscarriage of justice has occurred." *Holt v. Commonwealth*, 66 Va. App. 199, 209 (2016) (en banc) (quoting *Redman v. Commonwealth*, 25 Va. App. 215,

220-21 (1997)).  Whether to apply the ends of justice exception involves two questions: "(1) whether there is error as contended by the appellant; and (2) whether the failure to apply the ends of justice provision would result in a grave injustice."  *Commonwealth v. Bass*, 292 Va. 19, 27 (2016) (quoting *Gheorghiu v. Commonwealth*, 280 Va. 678, 689 (2010)).

"The burden of establishing a manifest injustice is a heavy one, and it rests with the appellant."  *Holt*, 66 Va. App. at 210 (quoting *Brittle v. Commonwealth*, 54 Va. App. 505, 514 (2009)).  "In order to avail oneself of the exception, [the appellant] must affirmatively show that a miscarriage of justice has occurred, not that a miscarriage *might* have occurred."  *Id.* (alteration in original) (quoting *Redman*, 25 Va. App. at 221).  But "[i]t is never enough for the defendant to merely assert a winning argument on the merits—for if that were enough procedural default 'would never apply, except when it does not matter.'"  *Winslow v. Commonwealth*, 62 Va. App. 539, 546 (2013) (quoting *Alford v. Commonwealth*, 56 Va. App. 706, 710 (2010)).

This Court finds that appellant has failed to show a miscarriage of justice resulting from the claim he asserts for the first time on appeal.  "[A] litigant who seeks to set aside a jury verdict or obtain a new trial on the basis of a juror's disability must demonstrate that the 'disability be such as to probably cause injustice in a criminal case to the Commonwealth or to the accused.'"  *Mason v. Commonwealth*, 255 Va. 505, 510 (1998) (quoting Code § 8.01-352(B)).  The record does not support the conclusion that the juror in question was "unfit for service" due to hearing difficulties.

Rather, the record shows only that the juror had a specific problem hearing the segment of appellant's police interview that was played during the Commonwealth's opening statement. The trial court itself even observed that the recording was of poor quality, and the Commonwealth promised to fix this issue by increasing the volume or using speakers when the recording was introduced at trial.  More importantly, when the Commonwealth did subsequently

introduce the full recording at trial, no juror indicated difficulty in hearing it. Based on these facts, this Court refuses to invoke the ends of justice exception and, therefore, does not consider the merits of appellant's unpreserved argument.

IV. Limiting Cross-Examination of Detective Savage

Appellant asserts that the trial court erred in sustaining the Commonwealth's hearsay objection "to certain cross-examination of . . . [Detective Savage] regarding certain conversations that she had with alleged victim [E.A.] . . . ." Other than citing pages of the trial transcript where defense counsel cross-examined Detective Savage about a conversation with E.A., appellant's brief does not identify the actual ruling he challenges on appeal or assert the evidence that he claims the trial court improperly excluded.[15] Nor does he provide legal authority to support his position.

Under Rule 5A:20(c), an appellant's opening brief must contain "[a]n exact reference to the page(s) of the record or appendix where the alleged error has been preserved in the trial court," but such reference "is not part of the assignment of error." Additionally, the brief must include "[a] clear and concise statement of the facts that relate to the assignments of error, with references to the pages of the record or appendix." Rule 5A:20(d). Merely citing to a range of pages in a transcript does not satisfy the requirements of Rule 5A:20, especially where the referenced material does not clarify the nature of the alleged error.

Even in the argument section of his brief, appellant makes no reference to any place in the record where he discussed the substance of "the proffered evidence." Nor does he direct this Court to where in the record the trial court made the purportedly erroneous ruling. Without such information, which is not readily apparent in the trial transcript, this Court is unable to confirm that

_____

[15] This Court notes that assignment of error IV only challenges the trial court's refusal to allow appellant to question Detective Savage about statements made by E.A., as opposed to statements made by any of the other victims.

the alleged error exists at all, let alone whether the alleged "excluded evidence" constituted hearsay and whether such exclusion was prejudicial to the defense.

Moreover, other than citing one case to establish the standard of review, appellant does not provide any legal authority to support the vague assertion that the trial court erred in precluding him from asking Detective Savage "certain cross-examination" questions "regarding certain conversations that she had with alleged victim [E.A.]." *See Davis v. Commonwealth*, 70 Va. App. 722, 738 (2019) (declining to consider appellant's arguments for which he cited only one source and provided no "supporting legal authority"). This Court has repeatedly held that "[u]nsupported assertions of error 'do not merit appellate consideration.'" *Bartley v. Commonwealth*, 67 Va. App. 740, 744 (2017) (quoting *Jones v. Commonwealth*, 51 Va. App. 730, 734 (2008)). "Simply put, '[i]t is not the role of the courts, trial or appellate, to research or construct a litigant's case or arguments for him or her, and where a party fails to develop an argument in support of his or her contention or merely constructs a skeletal argument, the issue is waived.'" *Blankenship v. Commonwealth*, 71 Va. App. 608, 623 n.2 (2020) (alteration in original) (quoting *Bartley*, 67 Va. App. at 746).

An appellate court "is entitled to have the issues clearly defined and to be cited pertinent authority." *Bartley*, 67 Va. App. at 744 (quoting *Jones*, 51 Va. App. at 734). Appellant's failure to adhere to these procedural rules is significant here, where he does not point to an adverse ruling, does not specify which questions he was precluded from asking on cross-examination, does not proffer what exact statements he was seeking to elicit from Detective Savage, and does not marshal any legal authority in support of his general argument. *See* Rule 5A:20(e) (requiring appellants to include "principles of law and authorities" in their opening brief "relating to each assignment of error"). This failure to adequately present and develop assignment of error IV in compliance with Rule 5A:20 leaves this Court without a factual or "legal prism through which to

view [appellant's] alleged error." *Bartley*, 67 Va. App. at 746. Accordingly, this Court does not consider the merits of appellant's waived claim.

V. Exclusion of Expert Testimony

Lastly, appellant asserts that the trial court erred in excluding the expert testimony of his intended witness, Dr. Jeffrey Gibbons. Although he acknowledges having "given an incomplete disclosure," appellant maintains that Dr. Gibbons should have been allowed to testify as an expert because the Commonwealth had "notice of certain expert testimony." In support of his claim that "the Commonwealth was sufficiently aware of the defendant's position," appellant points to the fact that the Commonwealth was "able to procure and present [its] own expert [witness]." He thus contends that the trial court abused its discretion in "[p]ermitting the Commonwealth to present [its] expert but barring the defendant's expert under the circumstances of excusable neglect by defense counsel and where the prejudice to the Commonwealth was slight at best."

Out the outset, this Court notes that any decision on the merits of this claim would not justify reversal. By explicitly requesting the trial court to exclude Dr. Gibbons' testimony on alternate grounds—finding the proffered testimony was merely common knowledge—appellant conceded the ultimate outcome he now seeks to reverse by objecting only to the other exclusionary ruling on the noncompliance issue. This Court is thus left with an unchallenged ruling precluding Dr. Gibbons' testimony, and no legal basis or argument for overturning such decision made by the trial court at appellant's own request.

Notwithstanding the above facts, this Court declines to reach the merits of the claim appellant does raise on appeal because it was not properly briefed and is therefore procedurally waived. Other than citing a single case for the standard of review, appellant's brief contains no principles of law or authority to support his specific claim that the trial court erred in excluding

- 27 -

Dr. Gibbons' expert testimony. Under Rule 5A:20(e), an appellant's brief must contain "the standard of review *and* the argument (including principles of law and authorities) relating to each assignment of error." (Emphasis added).

"Statements unsupported by argument, authority, or citations to the record do not permit appellate consideration." *Parks v. Parks*, 52 Va. App. 663, 664 (2008) (quoting *Cirrito v. Cirrito*, 44 Va. App. 287, 302 n.7 (2004)). "Appellate courts are not unlit rooms where attorneys may wander blindly about, hoping to stumble upon a reversible error." *Fadness v. Fadness*, 52 Va. App. 833, 851 (2008). "If [appellant] believed that the trial court erred, Rule 5A:20(e) required him 'to present that error to us with legal authority to support [his] contention.'" *Bartley*, 67 Va. App. at 746 (second alteration in original) (quoting *Fadness*, 52 Va. App. at 851). Finding the deficiency of appellant's brief significant, this Court refuses to consider appellant's claim on the merits. *See Parks*, 52 Va. App. at 664; *Bartley*, 67 Va. App. at 746.

CONCLUSION

For the foregoing reasons, this Court affirms the trial court's judgment.

*Affirmed.*